(577 P.2d 1202)

No. 48,745

DEBORAH A. HAND AND GLENN L. BOYD, Conservator for the Estate of Shawn Corey Flora, a Minor, *Appellants,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellee.*

Petition for review denied June 2, 1978.

Opinion filed May 5, 1978.

*Max M. Hinkle,* of Abilene, for appellants.

*Robert C. Foulston* and *James M. Armstrong,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for appellee.

*Michael S. Mullen,* Special Assistant Attorney General, attorney for *amicus curiae,* Fletcher Bell, Commissioner of Insurance of the State of Kansas.

Before REES, P.J., SWINEHART and MEYER, JJ.

REES, J.: This is an action brought to recover survivors' benefits and attorney fees under the personal injury protection (PIP) endorsement to an automobile liability insurance policy. The trial court limited the amount of survivors' benefits recoverable to the amount of actual economic loss proved. Attorney fees were denied. Plaintiffs appeal.

The deceased insured, Michael Flora, died in an automobile accident on October 13, 1974. He was survived by his wife, now Deborah Hand, and his minor son, Shawn Flora. Defendant is the insurer.

Deborah and Michael Flora were married on October 20, 1972. The union produced the one child, Shawn. The marriage did not continue to the mutual satisfaction of the parties. On July 6, 1974, Deborah moved out of the family home taking Shawn with her.

On August 23, 1974, Michael Flora filed a divorce action. There was no court order for temporary support payments. Michael Flora and Deborah arrived at an informal verbal agreement that pending the divorce he would pay $50 per month for Shawn's support. Michael Flora paid none of the agreed upon support. In fact, he paid nothing after July 6, 1974, for the support of Deborah or Shawn other than one purchase of groceries for Shawn. Michael Flora died before the divorce action could be heard. Within a month after Michael Flora's death, Deborah married Michael Hand. But for two weeks spent with her parents, Deborah and Shawn have resided with Michael Hand since July 6, 1974.

Deborah made claim against the defendant for PIP survivors' benefits. The claim was denied. Deborah and the conservator for Shawn filed this action. Defendant offered to confess judgment in the amount of $50 per month for twelve months.

The matter proceeded to judgment by the trial court. Substantially all material facts were stipulated by the parties. The only evidentiary hearing was on the issue of the amount of the plaintiffs' actual economic loss. The parties' contentions appear to have been thoroughly briefed and argued. The trial court concluded that in order to recover PIP survivors' benefits, the survivors must prove the monetary value of their actual economic loss suffered by reason of the cessation of the insured's monthly earnings. The court found that the only acceptable and nonspeculative evidence of actual economic loss of these plaintiffs was the agreement between Michael Flora and Deborah for monthly support for Shawn. Therefore, the judgment was limited to an award to Shawn in the amount of $50 per month for one year, plus interest, a total award of $740.94. Plaintiffs promptly appealed.

There are no questions presented to us by the parties concerning substitution benefits or expenses of survivors which have been avoided. Michael Flora's average monthly gross earnings for the year preceding his death were $711. Defendant stipulated at oral argument that for the purpose of this case, if plaintiffs prevail, they are entitled to recover $7,800 (12 times $650), together with appropriate interest.

We have the benefit of excellent briefs filed by the parties and *amicus curiae.*

Defendant's policy affords coverage for PIP benefits by lan-

guage that varies only inconsequentially from that of the Kansas Automobile Injury Reparations Act, K.S.A. 1974 (now 1977) Supp. 40-3101, *et seq.* (commonly known as the No-Fault Act and which we will refer to as "the Act"). By the terms of the policy and the Act, the mandatory requirements and obligations of the Act are assumed by and imposed upon defendant (K.S.A. 1974 [now 1977] Supp. 40-3107[g]). We will consider and apply the statutory language. There having been no material amendments to the relevant sections of the Act since its enactment effective July 1, 1973, we will refer to the statutory language as it appears in the 1977 Supplement to the Kansas Statutes Annotated.

Plaintiffs first contend that the district court erred in holding that survivors must prove actual economic loss occasioned by the death of the insured in order to be entitled to benefits, and that survivors' benefits are limited to the amount of that loss if less than $650 per month.

The definition of "survivor" is as follows:

" 'Survivor' means a decedent's spouse or child under the age of eighteen (18) years, where death of the decedent resulted from an injury." (K.S.A. 1977 Supp. 40-3103[x].)

The definition of "survivors' benefits" is as follows:

" 'Survivors' benefits' means total allowances to all survivors for: (1) Loss of an injured person's monthly earnings after his or her death, up to a maximum of not less than six hundred fifty dollars ($650) per month; and (2) substitution benefits following the injured person's death. Expenses of the survivors which have been avoided by reason of the injured person's death shall be subtracted from the allowances to which survivors would otherwise be entitled, and survivors' benefits shall not be paid for more than one (1) year after the injured person's death, less the number of months the injured person received disability benefits prior to his or her death." (K.S.A. 1977 Supp. 40-3103[y].)

At issue is interpretation of "allowances to all survivors for: (1) Loss of an injured person's monthly earnings after his or her death . . ." (K.S.A. 1977 Supp. 40-3103[y]). The holding of the trial court and defendant's contentions go most directly to the meaning of the word "loss."

Again, the trial court held and defendant contends the loss of earnings referred to in the statute is the survivors' actual economic loss sustained as a result of the death of the insured. Under this view the survivors must establish by satisfactory proof the monetary value of support being received by them at the time of the insured's death. Thus, defendant argues for affirmance on the

ground that Deborah had received no support from the deceased for more than three months prior to his death and Shawn was shown to have been no more than the beneficiary of the unperformed informal support agreement and the single purchase of groceries during that same three months.

Plaintiffs contend it is the deceased's loss of earnings occasioned by his death which controls the amount of survivors' benefits. In other words, it is said the survivors of an insured are automatically entitled to benefits in an amount equal to the deceased's average monthly earnings prior to his death, if within the $650 per month statutory limitation.

The language of K.S.A. 1977 Supp. 40-3103(y) is arguably subject to either interpretation. Our examination of the legislative history of the Act persuades us that plaintiffs' position is correct and it is that position we adopt.

The historical background, legislative proceedings, and changes made in a proposed law during the course of its enactment may properly be considered in determining legislative intent. *Urban Renewal Agency v. Decker,* 197 Kan. 157, Syl. 2, 415 P.2d 373 (1966).

Although since amended, the Act is primarily a product of the 1973 session of the Kansas Legislature. At that session, at least three no-fault proposals were introduced in the House. They were referred to the House Insurance Committee. One bill, H. B. 1048, was the proposal of an interim committee, the Special Committee on Motor Vehicle Accident Reparations. It contained no provision for survivors' benefits. Another bill, H. B. 1129, was authored by the Insurance Commissioner. It made express provision for survivors' benefits. The language of the bill was in part as follows:

" 'Survivors' loss' means net basic economic loss after decedent's death that his dependent survivors would have received from the decedent had he not suffered the injury causing death, less expenses of the survivors which have been avoided by reason of the decedent's death."

By its definition of "survivors' loss," H. B. 1129 proposed compensation to survivors for only such of the deceased's earnings as the survivors would have received following his death had he not died.

A subcommittee of the House Insurance Committee studied the various bills, including the two we have identified by

number. The subcommittee drafted a compromise bill containing elements of both H. B. 1048 and H. B. 1129. The compromise bill, titled Substitute for H. B. 1129, omitted the explicit "survivors' loss" provisions of H. B. 1129 and included the general language which now appears in K.S.A. 1977 Supp. 40-3103(y). Substitute for H. B. 1129 was ultimately approved by the House Insurance Committee and passed by the legislature with minor amendments not here relevant.

We believe the fact that the legislature had before it a bill which clearly proposed limitation of survivors' benefits to actual economic loss and rejected that proposal, albeit by committee action, is strong indication of legislative intent to not adopt the economic loss approach to survivors' benefits.

We are aware that defendant has presented a recently prepared affidavit of the chairman of the House subcommittee wherein it is said the legislative intent was that survivors' benefits were to replace only the monthly earnings of the deceased actually lost by the survivors. We are unable to square the affiant's statements with the facts of legislative action. We believe the latter speaks more loudly and we are unaware of precedent for judicial ascertainment of legislative intent through statements of legislators made years after the event.

We hold that a survivor need not prove actual economic loss to be entitled to survivors' benefits as defined by K.S.A. 1977 Supp. 40-3103(y). The phrase "loss of an injured person's monthly earnings after his or her death" refers to the loss of earning power occasioned by the death of the insured and is not measured by the actual loss of the survivors. This interpretation, in our opinion, renders survivors' benefits allowances consistent with allowances for disability benefits as defined by K.S.A. 1977 Supp. 40-3103(b).

The Act defines "monthly earnings." K.S.A. 1977 Supp. 40-3103(l). The "monthly earnings" of a regularly employed person are one-twelfth of the annual earnings of that person at the time of injury. Provision is made for determination of the "monthly earnings" of an unemployed or irregularly employed insured. Nowhere in the Act is there a definition of or reference to "economic loss." There is no formula for ascertainment of survivors' benefits other than in terms of the deceased's monthly earnings. If the legislature had intended survivors' benefits be limited to the economic loss suffered by the survivors, we believe

it would have been so stated or a formula would have been provided for computation of survivors' benefits in terms of something other than the statutorily defined "monthly earnings."

Difficulty in determination of the actual economic loss of a survivor occasioned by the death of an insured is well illustrated by the present case. Prior to July 6, 1974, the date Deborah moved out of the family home, the insured, Michael Flora, apparently was providing all of the support for his wife, Deborah, and son, Shawn. After July 6, 1974, and while the divorce was pending, the insured provided no support for either Deborah or Shawn, except for the grocery purchase, even though the informal child support agreement existed. If Michael Flora had lived until the divorce hearing, he was subject to judicial determination of the amount of his obligations for past and future support for both his wife and child. His future child support obligation would have been subject to modification. These obligations may have been more or less than $50 per month. We gather from the record that Michael Flora's actual support of his wife and son fluctuated from month to month prior to July 6, 1974. How was the amount of support at the time of his death to be established? By examination of the three months preceding his death? Or of the preceding twelve months? Or some other period? What of the insured's prospects for greater or less future monthly earnings? Equitable ascertainment of survivors' benefits on the basis of actual economic loss to the survivors would be difficult, if at all possible, in the absence of a statutory formula. These difficulties do not exist under the Act with regard to medical benefits, disability benefits, funeral benefits and rehabilitation benefits. It requires little imagination to bring to mind fact situations other than that before us where the problems and questions would be comparable if the trial court's interpretation of the statutory language was the rule.

The purpose of the no-fault law is to provide a means of compensating persons promptly for accidental bodily injuries arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided therein. K.S.A. 40-3102. Requiring determination of the economic loss suffered by survivors would delay payments to the survivors of motor vehicle accident victims. It would create litigation rather than reduce it. We believe the legislature in-

tended to avoid the delay and litigation an economic loss requirement or condition would entail.

We have reviewed the statutory and case law of other jurisdictions and find it of little relevance in interpretation of our statute. It appears that each state has fashioned its own distinctive automobile accident reparations system. However, when compensation to survivors of accident victims has been intended to be limited to actual economic loss, language clearly conveying that intention has been used. 11 Ky. Rev. Stat. (1976 Supp.) § 304.39-020(5)(d); 7 Minn. Stat. Ann. (1977 Supp.) § 65B.44 Subd. 6; Conn. Gen. Stat. Vol. VII, Chap. 690, § 38-319(b)(3); 27 Nev. Rev. Stat. § 698.070(5); 4B N.D. Cent. Code § 26-41-03(19).

We conclude the district court erred when it denied plaintiffs survivors' benefits beyond an amount equaling the economic loss suffered by plaintiffs as a result of the insured's death.

In reaching our conclusion, we have reviewed in detail the opinions in all cases involving the Act that have been before the Supreme Court and we have considered the parties' arguments in regard thereto. The cases include *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291 (1974); *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, 552 P.2d 1363 (1976); *Easom v. Farmers Insurance Co.,* 221 Kan. 415, 560 P.2d 117 (1977); *Davis v. Western Insurance Companies,* 221 Kan. 441, 560 P.2d 133 (1977); *Jaremko v. Jones,* 221 Kan. 444, 560 P.2d 136 (1977). We have been guided by the rules of statutory construction expressed in the cases as well as by the expressed analyses of the Act and its purposes. Specific reference to the cases and the arguments of the parties relating to them would unnecessarily extend this opinion.

In its brief and argument, defendant equates compensation for loss with benefit or allowance for loss. We are not convinced that PIP benefits are necessarily to be equated with compensation if the word compensation is taken to mean payment of a monetary sum neither greater nor less than the monetary value of actual economic loss.

In its decision, the trial court made mention of survivors' rights to disability benefits upon proof of entitlement to support. In view of our conclusion and decision, we need not pursue the matter of entitlement. It is sufficient to recover survivors' benefits if the claimant is within the statutory definition of survivor.

Plaintiffs next contend the trial court erred in holding that

Deborah had forfeited her right to receive support from Michael Flora by reason of her marital misconduct. Plaintiffs maintain that whether or not Deborah was justified in leaving the family home is irrelevant as to whether she is entitled to survivors' benefits under the policy. Defendant says that implicit in the district court's finding that Deborah was not entitled to survivors' benefits was a determination that she had, by her own conduct, relinquished any right to receive support from Michael Flora. Defendant relies upon the rule that the duty of a husband to support his wife terminates with gross marital misconduct on her part in violation of her duties as a wife (41 Am. Jur. 2d, Husband and Wife § 333, p. 275; *State v. Chace,* 124 Kan. 529, 261 Pac. 559 [1927]) to support its position that Deborah lost her right to survivors' benefits.

Our examination of the record does not convince us that the district court considered Deborah's conduct in denying her survivors' benefits. In fact, the district court correctly held that "the plaintiffs are not required to have been residing with the defendant to qualify for survivors' benefits   .   .   ." We find the district court denied Deborah survivors' benefits only because she was found unable to show an actual economic loss caused by the death of the insured.

Had the trial court held that Deborah forfeited her right to survivors' benefits due to marital misconduct, such holding would be erroneous. We are not here concerned with a husband's duty to support his wife. The wife is making a claim under an insurance policy for benefits as a survivor of the insured. Case law concerning forfeiture of entitlement to support for gross marital misconduct is not applicable. The Act does not limit the right of a decedent's spouse to recover survivors' benefits due to marital misconduct. K.S.A. 40-3103(x). We decline to read into the statute a restriction not placed therein by the legislature. To open the door to trial of domestic relations issues in an action for benefits under a first party insurance contract would be a mistake.

The last issue raised is whether the trial court erred in denying plaintiffs judgment for attorney fees.

K.S.A. 1977 Supp. 40-3111(b) provides in part as follows:

"(b) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. The attorney's fee shall be a charge against the insurer or self-insurer in addition to the benefits recovered, if the court finds that the insurer or self-insurer

unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

No Kansas case law has construed K.S.A. 40-3111(b). K.S.A. 40-256, concerning the award of attorney fees where an insurer refuses without just cause or excuse to pay the full amount of a claim, contains similar language and has been the subject of much attention by the Kansas Supreme Court. We find the case law concerning the recovery of attorney fees under K.S.A. 40-256 to be relevant authority in the determination of the present issue.

Construing K.S.A. 40-256, the Kansas Supreme Court has said that attorney fees will be awarded in cases of "frivolous and unfounded denial of liability." *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, 565, 470 P.2d 756 (1970). The issue of whether an insurer refused to pay without just cause or excuse is primarily one of fact to be determined in the first instance by the trial court. *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, 598, 528 P.2d 134 (1974); *Sloan v. Employers Casualty Ins. Co.,* 214 Kan. 443, 521 P.2d 249 (1974). The presence of a good faith legal controversy, particularly if it involves a matter of first impression in this jurisdiction, may constitute just cause or excuse for an insurer's refusal to pay. *Farm Bureau Mutual Ins. Co. v. Carr,* supra, p. 599; *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973).

In this case, defendant was not guilty of a frivolous and unfounded denial of liability; the legal issue involved is one of first impression and defendant's position was not without merit. We do not find the trial court erred.

The denial of recovery of attorney fees is affirmed. The judgment for survivors' benefits in the amount of $740.94 is reversed. The case is remanded with direction to enter judgment for the plaintiffs in the amount of $7,800, together with interest to be determined pursuant to K.S.A. 1977 Supp. 40-3110(b).