(613 P.2d 684)

No. 50,978

DENISE A. MORGAN, *Appellant,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellee.*

Opinion filed July 3, 1980.

*Richard D. Coffelt,* of Martin & Coffelt, of Hays, for the appellant.

*Christopher Randall* and *Lee Turner,* of Turner and Boisseau, Chartered, of Wichita, for the appellee.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: The plaintiff Denise Morgan appeals from a decision of the district court of Ellis County which denied her disability benefits from her insurer, the defendant State Farm Mutual Automobile Insurance Company, under the Kansas Au-

tomobile Reparations Act. Plaintiff alleges that the trial court erred (1) by finding that the plaintiff was not entitled to disability benefits from her insurer; and (2) by refusing to award reasonable attorney fees to the plaintiff.

On February 3, 1978, the plaintiff was injured while riding as a passenger in her automobile that was involved in an accident. The plaintiff's 1971 Plymouth was insured at the time by State Farm Mutual Automobile Insurance Company. Plaintiff's injuries which resulted from the accident included a broken nose, facial lacerations and a broken wrist. All the medical bills incurred for treatment of these injuries and all bills for property damage arising from the accident were duly paid by the defendant insurance company.

In a letter dated February 24, 1978, the plaintiff's counsel made a demand upon the defendant for disability benefits. In a letter dated March 3, 1978, the plaintiff's attorney informed defendant that he was seeking wage verification information from the plaintiff and was enclosing her application for personal injury protection benefits. On April 28, 1978, the defendant mailed to plaintiff's attorney a letter verifying an earlier telephone conversation of the same date during which the plaintiff's attorney refused to arrange a meeting of the plaintiff, her attorney and the defendant's claim specialist to obtain information about the plaintiff's employment. The letter noted that the company refused to pay any disability claim because of plaintiff's failure "to provide us the wage information and verification as promised . . . and your failure to provide us any information to substantiate the disability claim." Defendant again sought authorization to take a statement from the plaintiff regarding her employment.

Plaintiff filed suit to recover disability benefits. During trial to the court, plaintiff testified that at the time of the accident she was a divorced housewife with three young children. *She had not been employed for more than five years prior to the accident and had no work experience.* Sometime during the latter part of January, 1978, she decided to seek employment and sent her children to live with her parents so that she could more effectively carry out her job search. Through the Kansas employment office, she learned of a job as an assembler at Travenol in Hays. According to Janice Wilen, who was in the Travenol's personnel office at the

time, plaintiff was interviewed and given a physical examination on January 31, 1978, but she was not offered employment on that date or at any time thereafter. Ms. Wilen was unaware that the plaintiff suffered an injury during an automobile accident on February 3. She did state, however, that Travenol had a turnover rate of 3.5% and hired new personnel as needed. The plaintiff also sought employment at two cafes in Hays, but was not offered employment at either place.

In a judgment filed on March 8, 1979, the trial court ruled that plaintiff had failed to prove her entitlement to either disability or rehabilitation benefits and accordingly entered judgment for the defendant. Plaintiff was ordered to pay costs and was not awarded attorney fees. On March 23, 1979, the plaintiff filed a notice of appeal.

Whether an unemployed person with no past employment history and no firm offer of future employment is entitled to disability benefits under K.S.A. 1979 Supp. 40-3103(*b*) of the Kansas Automobile Injury Reparations Act is a matter of first impression. K.S.A. 1979 Supp. 40-3103(*b*) defines "disability benefits" as follows:

"(*b*) 'Disability benefits' means allowances for loss of monthly earnings due to an injured person's inability to engage in available and appropriate gainful activity, subject to the following conditions and limitations: (1) The injury sustained is the proximate cause of the injured person's inability to engage in available and appropriate gainful activity; (2) subject to the maximum benefits stated herein, allowances shall equal one hundred percent (100%) of any such loss per individual, unless such allowances are deemed not includable in gross income for federal income tax purposes, in which event such allowances shall be limited to eighty-five percent (85%); and (3) allowances shall be made up to a maximum of not less than six hundred fifty dollars ($650) per month and not to exceed one (1) year after the date the injured person becomes unable to engage in available and appropriate gainful activity." (Emphasis supplied.)

As "monthly earnings" is the loss to be compensated under 40-3103(*b*), K.S.A. 1979 Supp. 40-3103(*l*) must be consulted for its definition. 40-3103(*l*) provides:

"(*l*) 'Monthly earnings' means: (1) In the case of a regularly employed person or a person regularly self-employed, one-twelfth (1/12) of the annual earnings at the time of injury; or (2) in the case of a person not regularly employed or self-employed, or of an unemployed person, one-twelfth (1/12) of the anticipated annual earnings from the time such person would reasonably have been expected to be regularly employed. In calculating the anticipated annual earnings of an unemployed person who has previously been employed, the insurer shall average

the annual compensation of such person for not to exceed five (5) years preceding the year of injury or death, during which such person was employed." (Emphasis supplied.)

In this action the trial court denied the plaintiff's claim for disability benefits. In its decision the court applied the language in 40-3103(*b*) regarding a claimant's "inability to engage in available and appropriate gainful activity." Based upon that phrase and the provisions in 40-3103(*l*), the court concluded that the plaintiff had to show that "she had available and appropriate gainful activity that she could work at or that there was a time when she could reasonably have been expected to become regularly employed, before she can expect to receive any disability payments." The court reviewed the evidence and found plaintiff had unsuccessfully attempted to secure employment and that her initial efforts did not result in any job offers or further contacts with prospective employers. The trial court therefore found plaintiff failed to demonstrate her entitlement to disability payments.

Plaintiff interprets this decision to require an injured party to prove that she had a job or a job offer at the time of the injury before she could receive disability benefits. However, the trial court does not seemingly impose such a heavy burden; rather it emphasized these aspects of plaintiff's evidence to explain that she did not have a reasonable expectation of regular employment. In short, the court expected plaintiff to show more than the mere application for jobs.

That the intent of the legislature must govern whenever the intent may be ascertained from the statute is the paramount rule of statutory construction. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). Intent must be gleaned from a general consideration of the statute as a whole, *State v. V.F.W. Post No. 3722,* 215 Kan. 693, 527 P.2d 1020 (1974), and all parts of an act must be construed *in pari materia, Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, 544 P.2d 791 (1975).

To determine whether the trial court properly denied plaintiff's asserted eligibility for disability benefits, K.S.A. 1979 Supp. 40-3103(*b*) and (*l*) must be thoroughly examined. Before the amount of disability benefits may be computed, plaintiff must first satisfy the threshold requirements of 40-3103(*b*), *i.e.,* demonstrate that the lost earnings are due to her "inability to engage in available

and appropriate gainful activity," and that this inability is the result of her injury. The computational provisions of (*b*) and (*l*) must be interpreted in light of this requirement. They cannot be read alone to confer benefits where none were intended. Certainly, 40-3103(*b*) was intended to apply to a class of injured persons on the basis of work status. Without this restriction, anyone would be eligible for disability benefits, and the need for the elaborate formulae for computing the amount of the benefits based upon monthly earnings would be obviated.

The question of whether plaintiff's injuries prevented her from working is not raised and presumably she did satisfy that condition. However, the parties disagree as to the meaning of *"available and appropriate gainful activity,"* which is not defined in the act. "Words and phrases shall be construed according to the context and the approved usage of the language . . . ." K.S.A. 77-201 *Second.* Further, words are to be given their ordinary and natural meanings. *Grey v. Schmidt,* 224 Kan. 375, 581 P.2d 1180 (1978). In its most applicable sense, "available" is defined as "that is accessible or may be obtained: personally obtainable (as for employment) . . . ." Webster's Third New International Dictionary 150 (1976). The same dictionary defines "appropriate" as "specially suitable . . . ." p. 106.

The trier of fact should be vested with the responsibility of deciding whether or not a claimant is unable to perform available and appropriate employment. Moreover, each case must be resolved under its own peculiar facts and circumstances, because although the factual inquiry may be largely objective with respect to the type of work that might be accessible to an injured party, subjective factors such as the claimant's suitability for the employment must also be considered. Suitability might include such factors as a claimant's educational background, employment history, skills, age, etc.

While 40-3103(*b*) at first blush seems to restrict disability benefits to an injured party who is employed at the time of injury, 40-3103(*l*) dispels this notion by defining monthly earnings for various classes of workers, including unemployed persons. How, then, does 40-3103(*l*)(2) fit into the overall scheme of disability benefits? Even though monthly earnings as described in (*l*)(2) may apply to unemployed persons, it is also clear that they are tied to actual employment, either in the future, *i.e.,* one-twelfth of

*"anticipated annual earnings* from the time such person would *reasonably have been expected to be regularly employed,"* or in the past, as in the case of those persons with previous work experience, *i.e.,* "shall average the annual compensation of such person for not to exceed five (5) years preceding the year of injury . . . ." Again, like 40-3103(*b*), 40-3103(*l*) is grounded upon the premise that the unemployed person has either been employed at some time or *has a likely prospect of future employment.*

For a person without an employment history, the first formula of 40-3103(*l*)(2) provides the method of computing monthly earnings. Monthly earnings must be based upon anticipated annual earnings from the time such person would reasonably be expected to be regularly employed. Under 40-3103(*b*)(3) disability benefits may not exceed one year after the date the claimant is unable to engage in available and appropriate gainful activity. Therefore, plaintiff, an injured unemployed person, had to establish she could reasonably expect to be regularly employed within one year from the time of her inability to work. 40-3103(*l*)(2) requires a showing more than a mere hope or desire that employment will be obtained in the future. The trial court concluded that the plaintiff failed to make the necessary showing. Her efforts, coupled with her lack of employment history and general working skills, failed to convince the court that there was a reasonable expectation of future employment. Indeed, the court found itself reviewing a highly speculative assertion that claimant would ever be employed.

Further, tremendous proof problems exist regarding the amount of anticipated future earnings, where there is no past employment record to review nor any bona fide offer of future employment to consider. Undoubtedly, some persons without prior work experience and otherwise qualified might be able to adequately demonstrate entitlement to disability benefits. Such unemployed persons might include a college student who anticipates employment after the school term, a person engaged in a job training program with placement opportunities, or a person possessing special skills or education in high demand in the job market at the relevant time.

Therefore, plaintiff's argument that disability benefits might be available to someone without previous employment history but

who had a reasonable anticipation of future employment during the disability benefits period is probably valid. However, she failed to supply a sufficient quantum of evidence to establish that she fit into this category.

None of the few decisions construing various portions of the Kansas Automobile Injury Reparations Act considers the question before this court or otherwise provides useful analysis. The legislative history, which may be considered in determining legislative intent (*Urban Renewal Agency v. Decker,* 197 Kan. 157, Syl. ¶ 2, 415 P.2d 373 [1966]; *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 [1978]) is also less than enlightening. The Interim Studies Report to the 1973 Legislature of the Special Committee on Motor Vehicle Accident Reparations states that its proposed bill "requires no fault coverages with up to $3,000 in medical expenses and *wage loss* regardless of whether the injured party was at fault." (Emphasis added.) p. 54. The committee's proposal did not include a formula based upon monthly earnings for computing lost wages, as does the statute finally enacted. Rather, "disability benefits" were "one hundred percent (100%) of any loss of gross income and loss of earning capacity per individual" although this amount was to be limited to 85% of gross income if the benefits were not includable in gross income for federal income tax purposes. That proposal was limited to actual loss, and rather ambiguously to loss of earning capacity. It is not readily apparent whether the proposal would have afforded broader protection to an injured person than does the present statute.

Similarly, resort to statutory and case law from other jurisdictions has proven equally fruitless due to the diversity in no-fault insurance legislation. For example, Mich. Comp. Laws § 500.3107a (Mich. Stat. Ann. § 24.13107[1] [1980-81 Supp.]), provides that the work loss of a temporarily unemployed person is to be based upon earned income for the last month the person was employed full time preceding the accident. See also Uniform Motor Vehicle Accident Reparations Act (1972); 13 Uniform Laws Ann., Accident Reparations, §§ 1(a)(5)(*ii*), 13 (1975).

In summary, the plaintiff in this action would be required to prove the following to establish entitlement to disability payments:

1. That she was unable to engage in available and appropriate gainful employment by showing (a) the nature and extent of her injury; (b) her injury was the cause of her inability to work; (c) potential employment was accessible, obtainable and commensurate with her skills, educational background, work experience and any other relevant employment criteria. K.S.A. 1979 Supp. 40-3103(*b*).

2. That the time at which she would become regularly employed would be within one year after becoming unable to work as a result of her injuries. K.S.A. 1979 Supp. 40-3103(*b*) and (*l*).

3. Since she is unable to show an actual offer of employment, that she possesses something more than a mere hope or wish that employment will be forthcoming, *i.e.*, her efforts to gain employment must reflect diligent attempts and a serious intention to join the work force which persuade the trier of fact that regular employment is a reasonable expectation. K.S.A. 1979 Supp. 40-3103(*l*)(2).

4. A reasonable basis to calculate anticipated future earnings must be provided, *e.g.*, the prevailing wage in the particular employment field being pursued, the minimum wage, etc. K.S.A. 1979 Supp. 40-3103(*l*)(2).

All of the above are factual questions which must be determined by the trier of fact. Here the trial court concluded that the plaintiff's proof fell short of that necessary to support entitlement to disability benefits.

"The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed." *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, Syl. ¶ 5, 548 P.2d 719 (1976).

Based upon the evidence in the record, this court upholds the decision of the trial court denying plaintiff's claim for disability benefits under K.S.A. 1979 Supp. 40-3103.

As to plaintiff's second issue, attorney fees are authorized in personal injury protection actions under K.S.A. 1979 Supp. 40-3111(*b*). This section provides:

"(*b*) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits *which are overdue.*

The attorney's fee shall be a charge against the insurer or self-insurer in addition to the benefits recovered, if the court finds that the insurer or self-insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." (Emphasis supplied.)

The plaintiff contends that the trial court erred by refusing to order the defendant insurer to pay her reasonable attorney fees. She asserts that attorney fees are proper in this action because she demanded disability benefits which were overdue under K.S.A. 1979 Supp. 40-3110(*b*). That section states:

"(*b*) Personal injury protection benefits payable under this act shall be overdue if not paid within thirty (30) days after the insurer or self-insurer is furnished written notice of the fact of a covered loss and of the amount of same, except that disability benefits payable under this act shall be paid not less than every two (2) weeks after such notice. . . . *Provided,* That no such payment shall be deemed overdue where the insurer or self-insurer has reasonable proof to establish that it is not responsible for the payment, notwithstanding that written notice has been furnished."

The trial court in this case did not find that the plaintiff was entitled to any disability benefits, and therefore could not find that the insurer unreasonably refused to make any payments because it was not responsible for any. As we concur with the trial court's conclusion that personal injury protection benefits were properly denied, we agree that the insurer may not be held liable for plaintiff's attorney fees under K.S.A. 1979 Supp. 40-3111(*b*) where it was under no obligation to pay disability benefits under 40-3103.

Judgment of the trial court is affirmed.