(614 P.2d 455)
No. 50,733

WILLIAM M. COE, as Conservator of LAURA A. COE, a Minor, and REBECCA S. COE, *Appellants and Cross-Appellees,* v. SECURITY NATIONAL INSURANCE COMPANY, *Appellee and Cross-Appellant.*

Opinion filed July 18, 1980.

*Morgan Wright,* of Larned, for the appellants and cross-appellees.

*Christopher Randall,* of Turner & Boisseau, Chartered, of Wichita, for the appellee and cross-appellant.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

FOTH, C.J.: This is an action for survivors' benefits under the Kansas automobile injury reparations act, the so-called "No-Fault" insurance law, K.S.A. 1979 Supp. 40-3101 *et seq.* The basic issue presented is the proper method of computing an insured's anticipated annual earnings when the insured was unemployed at the time of death but had reasonable expectations

of regular employment and a past employment record including both regular and occasional employment.

Most of the operative facts are contained in the trial court's memorandum:

"Alice E. Coe died as a result of injuries she sustained from an automobile accident on December 29, 1975. The vehicle was owned by Alice E. Coe and the defendant, Security National Insurance Company, had issued a policy providing coverage to the vehicle at the time of the accident.

"Alice E. Coe was survived by the plaintiffs, Laura A. Coe, and Rebecca S. Coe, both natural children of Alice E. Coe and both under the age of eighteen at the time of their mother's death. Alice E. Coe's husband lost his life in an auto accident in 1972 and she was an unremarried widow.

"Alice E. Coe had been employed at Larned State Hospital for four years and had worked at odd jobs. She was unemployed on December 29, 1975. She earned the following sums from her employment:

| 1970 | $4954.00 |
|------|----------|
| 1971 | 5839.00 |
| 1972 | 5679.00 |
| 1973 | 1126.00 |
| 1974 | 400.00 |
| 1975 | 382.00 |

"On February 3, 1977, plaintiff made a written demand on the defendant for payment of survivor's benefits for insured's minor dependents under the Kansas Automobile Injury Reparations Act. Plaintiff failed to furnish defendant with written notice of the amount of their loss until March 19, 1977.

"Defendant, by letter of February 8, 1977, computed Alice E. Coe's lost earnings in the sum of $2685.41 and inquired whether this sum was acceptable to plaintiff. The present action was filed September 27, 1977. Defendant paid $2685.41 to the Clerk of the Pawnee County District Court on September 20, 1978, and caused a Confession of Judgment to be filed on the same date.

"Plaintiff filed a motion for Summary Judgment on August 10, 1978, with attached exhibits and brief. Defendant filed a response and brief to plaintiff's motion and admitted the above facts.

"The question is how should the plaintiff's benefits be computed under K.S.A. 1977 Supp. 40-3103($y$)(1). Income Alice E. Coe received in 1975 should not be computed in the 'average annual compensation'. Alice E. Coe's total income from 1970 through 1974 is $17,998.00, and the five year average of this sum is $3599.60.

"Plaintiff's motion for summary judgment should be sustained and plaintiff should have judgment against defendant in the sum of $3599.60, with interest at 18% per annum from March 19, 1977, and the costs of this action.

"In this case there is a good faith legal controversy upon the interpretation of a new statute. Therefore, the Court would find that the refusal to pay this claim was not unreasonable.

"Plaintiff's claim for attorney fees is denied."

Plaintiffs appeal, contending the court used the wrong method of computing their survivors' benefits and that it erred in denying attorney fees. Defendant cross-appeals from the award of interest.

We turn first to the computation of benefits. Under K.S.A. 1979 Supp. 40-3103(*y*), those benefits comprise in part, "[l]oss of an injured person's monthly earnings after his or her death" for one year, less the number of months benefits were paid to the injured person before death. Since Mrs. Coe received no benefits her survivors are entitled to her "monthly earnings" for a full year.

The phrase "monthly earnings" is defined in K.S.A. 1979 Supp. 40-3103(*l*):

"(*l*) 'Monthly earnings' means: (1) In the case of a regularly employed person or a person regularly self-employed, one-twelfth ($^1/_{12}$) of the annual earnings at the time of injury; or (2) in the case of a person not regularly employed or self-employed, or of an unemployed person, one-twelfth ($^1/_{12}$) of the anticipated annual earnings from the time such person would reasonably have been expected to be regularly employed. In calculating the anticipated annual earnings of an unemployed person who has previously been employed, the insurer shall average the annual compensation of such person for not to exceed five (5) years preceding the year of injury or death, during which such person was employed."

This subsection is designed to cover all cases. Clause (1) deals with those "regularly" employed or self-employed. "Regularly" is not defined, but we take it to refer to employment or self-employment which is expected to be of indefinite duration as opposed to temporary or seasonal employment. As to the regularly employed, "monthly" earnings are 1/12 of "annual" earnings *at the time of injury;* prior earnings are apparently not taken into account. Further, "annual" earnings are nowhere defined. Nevertheless, the computation consists of annualizing the insured's current rate of pay if, for example, it is on a weekly or monthly basis, to arrive at what can only be termed "anticipated annual earnings"—although that language is not used in clause (1) dealing with the regularly employed. The result is then divided by twelve to arrive at "monthly" earnings.

Clause (2) deals with those not "regularly" employed or self-employed, and with the unemployed. As to those in both these groups—the sporadic worker and the nonworker—what again must first be determined is statutorily termed "anticipated annual earnings" from the time the person would reasonably have been expected to be "regularly" employed had it not been for the accident. Again, once anticipated annual earnings is determined that amount is divided by twelve to arrive at "monthly" earnings.

As to those falling under clause (2), prior earnings become important. If the insured had never been employed, "anticipated annual earnings" must be established by whatever evidence of

job prospects is available. See *Morgan v. State Farm Mut. Auto. Ins. Co.*, 5 Kan. App. 2d 135, 613 P.2d 684 (1980). If, on the other hand, the unemployed person had previously been employed, the statute provides a formula for determining anticipated annual earnings, *i.e.,* "the insurer shall average the annual compensation of such person for not to exceed five (5) years preceding the year of injury or death, *during which such person was employed."* (Emphasis added.) The issue is whether the emphasized language means a year in which the insured was "regularly" employed—the term used universally throughout the rest of the statute—or whether *any* employment in a given year means that whatever was earned in that year is to be included in the average.

In this case the trial court took the latter approach. It first discarded the year of death. This appears to be proper, and there is no contention it is not; the statute refers to years "preceding the *year* of injury or death." It then totalled Mrs. Coe's compensation for the preceding five years—whether from regular employment or odd jobs—and divided by five to arrive at her average annual compensation. Although this approach finds some justification in the literal language of this one sentence in the statute, it appears to us to be contrary to legislative intent reflected in the statute as a whole, and to lead to unjust and unintended results in situations like this one.

To illustrate we suggest a familiar example: A senior law student who has just taken the bar examination is unemployed but has accepted an offer of employment beginning August 1 at an annual salary of $17,000; he is injured on July 31, 1980, and is unable to work for a year. Under the view taken by the trial court and urged by the insurance company here, his monthly benefits would depend on whether he had done any work to support himself while going to school. If he had *no* employment history, spending all his spare time studying or vacationing, he could easily show "anticipated annual earnings" which would entitle him to at least the $650 per month statutory minimum; more if the policy so provided. If, on the other hand, the same student had worked at odd jobs during the summer throughout college and law school, earning an average of $1,000 a year, his "anticipated annual earnings" would be $1,000 under the statutory formula as applied here, or $83.33 per month. To us the incongruity of this

result militates heavily against the literal interpretation adopted by the trial court.

Certain established canons of statutory construction seem applicable here:

"The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted." *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, Syl. ¶ 3, 552 P.2d 1363 (1976).

"In interpreting a statutory provision which is susceptible of more than one construction, it must be given that construction which, when considered in its entirety, gives expression to its intent and purpose." *United Parcel Service, Inc. v. Armold,* 218 Kan. 102, Syl. ¶ 2, 542 P.2d 694 (1975).

"Statutes should be so construed as to carry out the legislative intent, and when such intent is once ascertained, it should be given effect even though the literal meaning of the words used therein is not followed.

"Statutes should never be given a construction that leads to uncertainty, injustice or confusion if it is possible to construe them otherwise." *Willmeth v. Harris,* 195 Kan. 322, Syl. ¶¶ 2 & 3, 403 P.2d 973 (1965).

Applying those rules to this statute, we find that clause (1) defines anticipated annual earnings in terms of "regular" employment, and under clause (2) the irregularly employed and unemployed must show a reasonable expectation of "regular" employment before anticipated annual earnings even come into issue. We have said that survivors' benefits are intended to compensate for "the loss of earning power occasioned by the death of the insured." *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, Syl. ¶ 2, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978). "Earning Power" is nigh synonymous with "anticipated annual earnings" from regular employment. Earnings from odd jobs, part time work, and seasonal employment have little relevance to predicting anticipated earnings from regular employment, at least if not annualized. In order to harmonize the statutory scheme, we think it necessary in averaging past annual compensation to take fully into account only compensation from regular employment, and to either ignore or convert and annualize compensation for other than regular employment. Only in that way can one arrive at a realistic assessment of the insured's earning power when regularly employed, *i.e.,* "anticipated annual earnings."

Applying the statute as so interpreted to Mrs. Coe's employment record for the five years preceding the year of her death (1970-74) requires an adjustment for the last two years. During

the first three, 1970-72, she was a regular, full-time employee of the State of Kansas, and her annual compensation as reflected in the trial court's memorandum is not in controversy. In 1973, however, she resigned her job effective January 31. Her monthly rate of pay was $525 at that time. Upon leaving the State's service she was paid a total of $1,126.00, representing a January 1 payment for her December, 1972 salary, and a February 1 payment for her January, 1973 salary plus, presumably, accumulated leave. Under the trial court's rationale she is penalized heavily for having worked that one month. Had she quit a month earlier 1973 would have been omitted from the calculations entirely; if her one month's employment requires the year to be counted without adjustment, her annual earning power for that year is counted as only $1,126.00 even though it was demonstrably much higher. Similarly, in 1974 Mrs. Coe had a temporary substitute job for four weeks earning $351.00 and an odd job for $49.00, for a total of $400.00 for the year. Had she not earned anything, the year would have been omitted; the question is whether she is to be penalized by counting the $400.00 as demonstrating her earning power for that year.

If we are really to determine "anticipated annual earnings" from regular employment as the statute says we should, we think the past annual compensation to be averaged should include only compensation for regular employment. This requires different treatment for the years 1973 and 1974. In 1973 Mrs. Coe was regularly employed full time for one month at a monthly salary of $525.00; her "annual" compensation would have been $6300.00, and that figure should be averaged with the previous three years. In 1974 she was never regularly employed, and in our view that year should be omitted. The result, by our calculations, is:

| | |
|------|-----------|
| 1970 | $ 4,954.00 |
| 1971 | 5,839.00 |
| 1972 | 5,679.00 |
| 1973 | 6,300.00 |
| | $22,772.00 |

Dividing by 4 gives $5,693.00 as her average annual compensation during those years during which she was regularly employed. That is the amount we hold the plaintiffs are entitled to as survivors' benefits.

As to attorney fees, the trial court disallowed them on the basis

that a good faith legal controversy existed. We agree. See *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, Syl. ¶ 3.

The trial court also allowed interest at the statutory rate of 18% (K.S.A. 1979 Supp. 40-3110[*b*]) from March 19, 1977, thirty days after plaintiffs finally filed their proof of loss. Regardless of the dispute over amounts, the benefits were payable then and defendant paid nothing until it confessed judgment on September 17, 1978, and paid $2,685.41 into court. The trial court correctly found that benefits were "overdue" after March 19, 1977. Plaintiffs were entitled to interest as awarded by the trial court and the cross appeal must fail.

The judgment is reversed as to the amount of survivors' benefits awarded and remanded with directions to enter judgment for $5,693.00 plus interest. Otherwise the judgment is affirmed.