No. 53,089

Virginia C. Armacost, (now Virginia C. Chapman) *Appellant,* v. State Farm Mutual Automobile Insurance Company, *Appellee.*

(644 P.2d 403)

Opinion filed May 8, 1982.

*Lawrence E. Sheppard,* of Sheppard & Holman, of Prairie Village, argued the cause and *Joseph Y. Holman,* of the same firm, was with him on the brief for appellant.

*William P. Coates, Jr.,* of Rushfelt, Mueller, Druten and Moran, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Holmes J.: Plaintiff, Virginia C. Armacost, appeals from the granting of summary judgment in favor of the defendant, State Farm Mutual Automobile Insurance Company, in an action to recover personal injury protection (PIP) disability benefits pursuant to her automobile insurance contract with State Farm and the Kansas Automobile Injury Reparation Act, K.S.A. 40-3101 *et seq.* (the Act). As the facts were undisputed, both parties filed motions for summary judgment. Defendant prevailed and plaintiff appeals.

Plaintiff is a school teacher and has been regularly employed by Shawnee Mission Unified School District No. 512 since 1976. Her employment contract for the 1979-80 school year was entered into June 25, 1979, and was to cover a teaching period from August 30, 1979, through June 6, 1980, and provided she would be paid in twelve monthly installments beginning September 20, 1979. Plaintiff performed her duties satisfactorily until March 10, 1980, when she was injured in an automobile accident which prevented her from working the rest of the school year. The

record does not reflect what, if any, compensation she received from her employer after March 10, 1980. On May 28, 1980, plaintiff entered into a new contract with U.S.D. No. 512 for the 1980-81 school year beginning August 28, 1980. However, due to the continuing disability from the automobile accident, she was unable to enter upon her duties under the 1980-81 contract.

Following the accident, plaintiff sought PIP benefits from State Farm and received disability payments for the period from March 10, 1980, to March 10, 1981, except for the period from June 5th through August 28th, 1980. Plaintiff, in this action, seeks benefits for that period and the defendant denies she is entitled to them. It is conceded that plaintiff was disabled and unable to work during the period in question but it is defendant's position that as the plaintiff had not intended to work during her vacation she has lost nothing and is not entitled to disability benefits. Plaintiff concedes she had not intended to work during the summer. Based upon the foregoing undisputed facts, the trial court found plaintiff was not a "regularly employed person" as contemplated in K.S.A. 40-3103 and that the injury was not the proximate cause of her not working during her vacation period.

The Kansas automobile injury reparation act, K.S.A. 40-3101 *et seq.*, was designed to provide prompt compensation to automobile accident victims in lieu of liability for damages under certain limited conditions set forth in the act.

K.S.A. 40-3103 provides in pertinent part:

"(b) 'Disability benefits' means allowances for loss of monthly earnings due to an injured person's inability to engage in available and appropriate gainful activity, subject to the following conditions and limitations: (1) The injury sustained is the proximate cause of the injured person's inability to engage in available and appropriate gainful activity; . . .

. . . . .

"(l) 'Monthly earnings' means: (1) In the case of a regularly employed person or a person regularly self-employed, one-twelfth ($^{1}/_{12}$) of the annual earnings at the time of injury; . . . ."

The statute goes on to indicate the method of computing the monthly earnings of persons who are not regularly employed or who are unemployed. The insurance policy issued by the defendant to the plaintiff complies in all respects with the requirements of the statute and provides the same coverage as that in the statute.

It was the opinion of the trial court that because plaintiff did

not intend to work during the summer vacation she could not qualify for benefits under the act because "Plaintiff's injury was not the proximate cause for [her] not working between the period of June 6, 1980, and August 28, 1980, but rather her decision to remain at home with her child."

While plaintiff's intent not to work during her vacation may have been prior to the accident, the proximate cause of her not working as determined by the trial court, it was her injury which was the proximate cause of her *inability* to work. As we view the facts in this case, the crucial determination is whether plaintiff was a "regularly employed person" within the purview of the statute and, if she was, then her monthly earnings are calculated on the basis of 1/12th of her annual salary. If it is determined that a person is regularly employed and that the person's injury is the proximate cause of an inability to work, the monthly benefits provision only comes into play in determining the amount of disability benefits payable. Is a person's scope of employment to be determined by the length of one's vacation? We think not. It is true that most school teachers have an unusually long summer vacation by comparison to most employees but when a teacher has been employed for several years in the same position and has her contract renewed regularly from year to year, we cannot say that she is regularly employed only during the school year and that she becomes an unemployed person each summer for approximately two months. As a part of the teaching profession, many teachers are required to take additional training and education during the summer months to keep their current status or advance to a better one.

While some may envy the length of the school teacher's vacation period, it is a necessary factor inherent in the teaching profession and does not result in the career teacher being any less regularly employed than the factory worker who may receive only one or two weeks vacation. If the length of one's vacation is the determining factor where do we draw the line? There is nothing to prevent any employee from seeking temporary employment during the vacation period, regardless of its duration, but does the failure of one to work during his vacation automatically result in that person being unemployed? The answers are obvious. It may also be noted that in times of economic distress many factory and industrial workers, as well as others, may be forced to endure a

non-scheduled layoff; however, they are not terminated as employees, continue to have a job to return to at the end of the layoff period and probably consider themselves regularly employed.

Other areas of our law recognize that school teachers are regularly employed persons and under certain conditions they have a vested right to the renewal or continuance of their employment from year to year. K.S.A. 72-5411 and 72-5437. K.S.A. 44-706(k) provides that school teachers, among others who are employed by educational institutions, are ineligible for unemployment compensation benefits during the summer break between contract years.

The trial court relied upon *Morgan v. State Farm Mut. Auto. Ins. Co.,* 5 Kan. App. 2d 135, 613 P.2d 684 (1980), in reaching its decision. In *Morgan* the plaintiff had been unemployed for over five years, had no work experience and no definite possibilities of future employment. In view of our determination that the plaintiff in this case qualified as a regularly employed person, reliance upon *Morgan* is misplaced.

Defendant argues that the Act only covers actual economic loss. In *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978), the claimant was the surviving widow of the deceased insured. The parties had been separated and the deceased had not been providing support to his estranged wife prior to his death. The court held that it was not necessary for the survivor to show an actual economic loss to recover benefits under the Act.

We hold that under the facts of this case, the plaintiff was a regularly employed person within the purview of K.S.A. 40-3101 *et seq.* during the period of her vacation from teaching duties in 1980 and is entitled to payment of PIP disability benefits for that period from June 5, 1980, through August 28, 1980.

Plaintiff's next point on appeal is that the past due payments should draw interest at 18% per annum under K.S.A. 40-3110(b) and that she is entitled to reasonable attorney fees under K.S.A. 40-3111(b). In *Coe v. Security National Ins. Co.,* 228 Kan. 624, 620 P.2d 1108 (1980), we held:

"When there is a good faith controversy as to the amount of survivors' benefits due under K.S.A. 1979 Supp. 40-3103(l) an insurer should not be penalized by applying the eighteen percent (18%) interest provision contained in K.S.A. 1979 Supp. 40-3110." Syl. ¶ 3.

K.S.A. 40-3111(*b*) provides in part:

"(*b*) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. The attorney's fee shall be a charge against the insurer or self-insurer in addition to the benefits recovered, if the court finds that the insurer or self-insurer unreasonably delayed in making proper payment."

In the instant case, the trial court held for the defendant and denied attorney fees. The opinion of this court is less than unanimous and the issue presented on appeal is one of first impression under our statutes. Obviously, there has been a good faith controversy and we cannot say the defendant unreasonably refused to pay plaintiff's claim. Interest and attorney fees are not warranted in this case.

The case is remanded to the trial court with directions to enter judgment for the plaintiff consistent with the foregoing opinion.

McFARLAND, J., dissenting: The majority opinion remands the case to the trial court with directions "to enter judgment for the plaintiff consistent with the foregoing opinion." What judgment would be "consistent" with the majority opinion? The opinion is capable of two significantly different interpretations. I agree with one and disagree with the other. Therefore, I must dissent.

I concur with the conclusion of the majority that plaintiff is a regularly employed person. I believe that the plaintiff is entitled to be made whole from any salary loss incurred in the 1979-80 contract year as a result of the accident. Unfortunately, the parties have not seen fit to provide us with the actual figures involved. As I understand the situation, plaintiff received less salary under some type of formula by virtue of her having missed school days as a result of the accident. For illustrative purposes, let us assume the following. Plaintiff's contract called for an annual salary of $12,000 to be paid in 12 monthly installments of $1,000. Plaintiff received six monthly checks of $1,000 each prior to her accident, representing September 20 through February 20, for a total of $6,000. As a result of the accident, plaintiff received only $500 per month for the salary installments due March 20 through August 20 for a total of $3,000. Her salary for the school year would then be $9,000 as opposed to $12,000. Plaintiff, a regularly employed person, thus would have suffered loss of income of $3,000 and be entitled to PIP disability payments to make up the difference.

We know plaintiff has received some PIP payments for the

period March 10, 1980, through June 5, 1980. I would remand the case with directions to determine: (1) the amount of salary due plaintiff under her 1979-80 contract, had same been fully performed; (2) the amount actually paid plaintiff under said contract; (3) the amount of PIP disability payments to plaintiff covering time periods within the contract year; and (4) enter judgment in favor of plaintiff for any shortfall existing after the amounts set forth in (2) and (3) are subtracted from (1) above. If this is the result "consistent with majority opinion" I would agree therewith.

However, if the majority intended this result, then why does it become so preoccupied with plaintiff's accident-induced inability to work during the summer of 1980 as opposed to her expressed intent not to work at a summer job. Does the majority intend the trial court to determine what plaintiff might have earned at some unspecified summer job and add that into lost earnings for PIP disability benefits computation purposes? If so, I strongly disagree therewith.

Further, the following paragraph from the majority opinion is inappropriate and its inclusion is misleading.

"Defendant argues that the Act only covers actual economic loss. In *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978), the claimant was the surviving widow of the deceased insured. The parties had been separated and the deceased had not been providing support to his estranged wife prior to his death. The court held that it was not necessary for the survivor to show an actual economic loss to recover benefits under the Act." 231 Kan. at 276.

*Hand* involves *survivors'* benefits under K.S.A. 40-3103($y$). We are concerned herein with *disability* benefits under K.S.A. 40-3103($b$), which provides:

"(b) 'Disability benefits' means allowances for loss of monthly earnings . . . (2) subject to the maximum benefits stated herein, allowances shall equal one hundred percent (100%) of any such loss per individual . . . ."

The section on *survivors'* benefits (K.S.A. 40-3103[$y$]) does not expressly limit the recovery to actual economic loss. The inclusion of the *Hand* citation appears to obliterate a key distinction between the two types of benefits without any consideration thereto. Also, if plaintiff's recovery is limited to being made whole for any loss in her teacher's salary, then why is reference to *Hand* even included?

For the reasons above expressed, I dissent from the majority opinion.