(629 P.2d 720)
No. 51,488

EDITH E. BRADLEY, *Plaintiff-Appellee*, v. AID INSURANCE COMPANY, *Defendant-Appellant*, CONTINENTAL INSURANCE CO., *Defendant-Appellant*.

Petition for review denied July 16, 1981.

Opinion filed May 29, 1981.

*Larry Withers*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellant Continental Insurance Company.

*Terry J. Malone*, of Williams, Larson, Voss, Strobel & Estes, of Dodge City, for appellant AID Insurance Company.

*John E. Fierro*, of Dodge City, for appellee.

*Robert E. Keeshan*, of Scott, Quinlan & Hecht, of Topeka, for *amicus curiae* Kansas Trial Lawyers Association.

*William R. Sampson*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for *amicus curiae* Kansas Association of Defense Counsel.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

BRAZIL, J.: This is an insurance case that involves first-party claims by an insured against two insurance carriers for recovery of personal injury protection (PIP) benefits. We are being asked to determine contract rights and, in so doing, to also interpret the Kansas Automobile Injury Reparations Act, K.S.A. 1980 Supp. 40-3101 *et seq.*

On September 20, 1977, James E. Bradley died as the result of an automobile accident. He was survived by his wife, Edith E. Bradley. At the time of the accident Mr. Bradley was driving a 1976 Volkswagen, which he owned. He was the named insured on two separate insurance policies issued by two insurance companies specifically covering the 1976 Volkswagen as an "insured motor vehicle." The policies were issued, respectively, by defendants, AID Insurance Company and Continental Insurance Company. Each policy contained standard PIP endorsements required by K.S.A. 1980 Supp. 40-3101 *et seq.*

At the time of Mr. Bradley's death he was retired. He was receiving a teacher's retirement benefit of $252.00 per month. This pension terminated upon his death. Mr. Bradley was also receiving federal social security benefits which terminated upon his death. As a result, Mrs. Bradley is now receiving $117.80 per month less in social security benefits than she and Mr. Bradley received prior to his death. The yearly total for the pension and social security benefits lost amounts to $4,437.60.

Up until the time of his death, Mr. Bradley was self-employed in the used car business. From January, 1977, until his death in September, 1977, Mr. Bradley sold twenty-four vehicles for a gross sum of $26,634. The gross profit from these sales was $7,990. For tax purposes, however, the business sustained a loss of $8,447.78 for 1977.

Defendants jointly paid Mrs. Bradley $1,000 in funeral benefits, taking the position that PIP benefits cannot be stacked and that under K.S.A. 1980 Supp. 40-3103(*d*), $1,000 was the maximum funeral benefit payable. The actual amount of Mr. Bradley's funeral expenses was $1,432.76.

Defendants refused to pay Mrs. Bradley survivor's benefits, taking the position that pension and social security benefits are not included within the meaning of "monthly earnings" under

K.S.A. 1980 Supp. 40-3103($l$) and that there were no earnings from the used car business in that it showed a loss for tax purposes.

The trial court held that survivor's benefits should be based on the pension, social security, and gross profits of the used car business. The total of these amounts for 1977 was $12,427.60 ($4,437.60 *annual* pension and social security, *plus* $7,990.00 gross profits from used cars through September, 1977). Since the maximum survivor's benefits allowable under K.S.A. 1980 Supp. 40-3103($y$) is $650 per month for one year, or $7,800, the court found this amount recoverable under the policies. The court then held that PIP benefits can be stacked and ordered *each* insurance company to pay $7,800 for survivor's benefits and $1,000 for funeral benefits. Since each company had previously paid $500 in funeral benefits, judgment was entered against each of the defendants in the amount of $8,300 ($7,800 plus $500). Defendants appeal.

This case requires interpretation of portions of the Kansas Automobile Injury Reparations Act, K.S.A. 1980 Supp. 40-3101 *et seq., commonly called the No-Fault Insurance Act.* The "heart of the Act," *Manzanares v. Bell,* 214 Kan. 589, 608, 522 P.2d 1291 (1974), is 40-3102, which provides that:

"The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance, or use of motor vehicles in lieu of liability for damages *to the extent provided herein.*" (Emphasis supplied.)

K.S.A. 1980 Supp. 40-3107($f$) requires every policy of motor vehicle liability insurance issued to a Kansas owner to include PIP benefits "not exceeding the limits prescribed for each of such benefits   .   .   ." Among the PIP benefits prescribed by the act are survivor's benefits defined in K.S.A. 1980 Supp. 40-3103($y$) as follows:

"($y$) 'Survivors' benefits' means total allowances to all survivors for: (1) Loss of an injured person's monthly earnings after his or her death, up to a maximum of not less than six hundred fifty dollars ($650) per month; and (2) substitution benefits following the injured person's death. Expenses of the survivors which have been avoided by reason of the injured person's death shall be subtracted from the allowances to which survivors would otherwise be entitled, and survivors' benefits shall not be paid for more than one (1) year after the injured person's death, less the number of months the injured person received disability benefits prior to his or her death."

K.S.A. 1980 Supp. 40-3103($l$), in turn, defines monthly earnings:

"(*l*) 'Monthly earnings' means: (1) In the case of a regularly employed person or a person regularly self-employed, one-twelfth (1/12) of the annual earnings at the time of injury; or (2) in the case of a person not regularly employed or self-employed, or of an unemployed person, one-twelfth (1/12) of the anticipated annual earnings from the time such person would reasonably have been expected to be regularly employed. In calculating the anticipated annual earnings of an unemployed person who has previously been employed, the insurer shall average the annual compensation of such person for not to exceed five (5) years preceding the year of injury or death, during which such person was employed."

Defendants emphasize the "employment" language of subsection (*l*). In essence, their argument is that only *employment* earnings are compensable. This argument is extended by *amicus* Kansas Association of Defense Counsel, which argues that persons fully retired (ignoring for the moment Mr. Bradley's car business) who receive social security or pension benefits do not fit within either subsection of 40-3103(*l*). Such persons, it argues, are not "regularly employed" or "regularly self-employed"; therefore they do not fit within subsection (1) of 40-3103(*l*). Fully retired persons, it contends, could fit only under subsection (2) dealing with persons "not regularly employed or self-employed" or those "unemployed." "Monthly earnings" for persons falling under subsection (2), however, are measured as "one-twelfth (1/12) of the anticipated annual earnings from the time such person would reasonably have been expected to be regularly employed." Since fully retired persons can in no way establish such a time of expected future regular employment, it follows that they can have no "monthly earnings" compensable under the reparations act. To allow Mr. Bradley's pension and social security benefits to be treated as monthly earnings, even though Mr. Bradley was regularly employed in car sales, would sanction the absurd result of providing insurance coverage on such benefits to retired people who work, but not to those who do not work.

Plaintiff argues that Mr. Bradley contributed to the pension and social security programs during his employment years and that the benefits he received therefrom constituted deferred earnings that should be compensable. Plaintiff contends that to hold otherwise would discriminate against retired or other fixed income individuals who pay the same premiums for PIP coverage. Under this argument, *all* recipients of pension or social security benefits

would have insurance coverage for such benefits regardless of their present or prospective work status.

In *Hand v. State Farm Mut. Auto. Ins. Co.*, 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978), a widow was allowed full loss of earnings survivor's benefits, even though at the time of her husband's death a divorce was pending and she was receiving no monetary support from him. The court rejected an argument that the statutory loss of earnings was limited to actual economic loss. The court noted in *Hand* that certain language proposed by the pertinent house bill was rejected by the legislature in favor of the language now found in K.S.A. 1980 Supp. 40-3103($y$). The rejected portion reads as follows:

" ' "Survivors' loss" means net basic economic loss after decedent's death that his dependent survivors would have received from the decedent had he not suffered the injury causing death, less expenses of the survivors which have been avoided by reason of the decedent's death.' " p. 256.

The court concluded:

"We hold that a survivor need not prove actual economic loss to be entitled to survivors' benefits as defined by K.S.A. 1977 Supp. 40-3103(y). The phrase 'loss of an injured person's monthly earnings after his or her death' refers to the loss of earning power occasioned by the death of the insured and is not measured by the actual loss of the survivors. This interpretation, in our opinion, renders survivors' benefits allowances consistent with allowances for disability benefits as defined by K.S.A. 1977 Supp. 40-3103(b).

"The Act defines 'monthly earnings.' K.S.A. 1977 Supp. 40-3103(l). The 'monthly earnings' of a regularly employed person are one-twelfth of the annual earnings of that person at the time of injury. Provision is made for determination of the 'monthly earnings' of an unemployed or irregularly employed insured. Nowhere in the Act is there a definition of or reference to 'economic loss.' There is no formula for ascertainment of survivors' benefits other than in terms of the deceased's monthly earnings. If the legislature had intended survivors' benefits be limited to the economic loss suffered by the survivors, we believe it would have been so stated or a formula would have been provided for computation of survivors' benefits in terms of something other than the statutorily defined 'monthly earnings.' " pp. 257-58.

There can be no doubt that with the cessation of Mr. Bradley's pension and social security benefits Mrs. Bradley suffered an economic loss just as severe as other persons suffer from the loss of a spouse's wages or salary. Economic loss, however, is not the standard of the reparations act. In *Hand* the rejection of such a standard worked for the insured. In the present case, it works *against* the insured.

As in *Hand* and other cases considering the act, a search of additional legislative history and the law in other jurisdictions is of limited or no assistance. See *Coe v. Security National Ins. Co.,* 228 Kan. 624, 620 P.2d 1108 (1980); *Morgan v. State Farm Mut. Auto. Ins. Co.,* 5 Kan. App. 2d 135, 613 P.2d 684 (1980). We are left with the language of the statute.

K.S.A. 1980 Supp. 40-3103($y$) and ($l$) by their terms are clearly limited to earnings from present or reasonably expected future employment. See also *Morgan v. State Farm Mut. Auto. Ins. Co.,* 5 Kan. App. 2d 135 ("monthly earnings" in context of disability benefits under the act). If the legislature had intended loss of pension or social security benefits to be compensable under the act, the formula for determining monthly earnings could easily have been so written. We find the trial court erred in including pension and social security benefits in the coverage of the act.

Plaintiff's argument concerning the discriminating effect of such a holding has some merit; however, insofar as this argument attacks the constitutionality of the act, it is presented for the first time on appeal and then only peripherally. While the latter might not always prevent consideration, *State v. Nelson,* 210 Kan. 439, Syl. ¶ 4, 502 P.2d 841 (1972), we believe the issue should not be addressed at this time.

All parties agree that Mr. Bradley in regard to his car business was "regularly self-employed" within the meaning of 40-3103($l$). The defendants and *amicus* defense counsel contend, however, that because the car business was operated at a loss for tax purposes for the year in which Mr. Bradley's death occurred, there were no "annual earnings" compensable under the policies. Defendant Continental Insurance Company argues that the court erred in using gross income as the standard for measuring earnings and further erred in relying on Mrs. Bradley's opinion testimony that income from car sales was used for family support.

Much of what has been said above concerning pension and social security benefits is also applicable to this issue. If the award for earnings was based *solely* on Mrs. Bradley's testimony, the defendants would be correct in asserting that the award was speculative. However, her testimony must be considered in light of the tax return that showed the sales figures. Even so viewed, her testimony was simply an attempt to show that even though a tax loss was incurred, there were earnings to Mr. Bradley from the

business. The issue thus comes down to whether within the meaning of the statute there can ever be earnings from a sole proprietorship operated at a loss for tax purposes.

The defendants and *amicus* defense counsel contend that earnings within the meaning of the statute, for self-employed persons must mean "net profit from the business, not gross income." Since there were no net profits, they argue there can be no "earnings." In support of this argument they cite Kansas cases and cases from other jurisdictions dealing with recovery of "lost profits" as damages in tort actions. Particular reliance is placed on *McCracken v. Stewart,* 170 Kan. 129, 223 P.2d 963 (1950). In that case, plaintiff was in partnership with his wife as a salesman. At trial he testified that his best recollection was that his income was $25 per day at the time of the accident. His records had been lost in a tornado. The trial court refused to admit into evidence a copy of his wife's income tax return which showed the partnership operated at a loss and paid plaintiff only $5 per day for 175 days. The jury returned a verdict for plaintiff in the amount of $2,000 for lost profits. On appeal that portion of the judgment was reversed. The court held plaintiff's "recollection" testimony to be too speculative; "[t]his court has consistently held that damages cannot be established by statements of a witness based on mere opinion without regard to specific facts or knowledge upon which their opinions were based." 170 Kan. at 136. Plaintiff's wife's tax return was held to be relevant and improperly excluded from evidence by the trial court. It is of note that the Supreme Court remanded the case for a new trial as to lost profits and did not discuss whether the partnership's tax loss precluded any recovery for "loss of profit or remuneration from business."

The defendants and *amicus* defense counsel argue that a self-employed person's PIP earnings are measured solely by the profits of his or her business. Encyclopedic law states:

"In estimating damages for loss of time and earnings, the terms 'profits' and 'earnings' are not synonymous. Plaintiff's income, as derived from a business which is conducted with little or no capital, but is entirely or almost entirely dependent on plaintiff's personal labor, may be considered as affording a measure of damages for loss of time; but . . . profits . . . which constitute a return on invested capital, cannot be considered." 25 C.J.S., Damages § 86, pp. 949-50.

Thus, profits should be the measure of earnings for PIP benefit purposes only where the business does not involve substantial

investment capital and depends only on the personal endeavors of the insured. *Cf. Hibler v. Nordyke,* 212 Kan. 619, 512 P.2d 485 (1973).

Other states have encountered similar difficulties. In *Zyck v. Hartford Insurance Group,* 143 N.J. Super. 580, 364 A.2d 32 (1976), *modified* 150 N.J. Super. 431, 375 A.2d 1232, *certification denied* 75 N.J. 521, 384 A.2d 501 (1977), the issue was the proper measure of income continuation PIP benefits for a real estate salesman temporarily disabled in an automobile accident. The court held that when overhead was low and the commissions were generated by the personal endeavors of the insured, the profits from the business could be equated with income for PIP purposes. This conclusion is buttressed by the fact that business profits of this nature are reported as personal income under the Internal Revenue Act. The insured is thus provided with an expeditious means of proving his lost income and is also able to determine in advance the amount of income that will be protected by his no-fault coverage. The insurer also benefits since it may make an intelligent decision regarding such claims within a short period of time and without the necessity of extensive investigation. This rule is thus in accord with the guiding principle of efficiency implicit in a workable no-fault scheme. The court concluded that income benefits are properly based on gross income in the sense that the commission income should not be reduced by income taxes and similar deductions. However, the gross commission receipt *should* be reduced by the expenses incurred in earning the commissions.

"Under the common law of damages, lost earnings attributable to lost commissions must be reduced by expenses incurred in earning these commissions before being admissible to prove the value of lost time. *Diamond Rubber Co. v. Harryman,* 41 Colo. 415, 92 P. 922 (Sup. Ct. 1907). Recovery under No Fault should not exceed recovery at common law absent an indication by the Legislature to the contrary. Further, plaintiff's 'commissions' from his real estate sales formed the 'gross receipts' of the business. '[G]ross receipts of a plaintiff's business are no index to either net earnings or earning power.' *Rodgers v. Yellow Cab Co.,* 395 Pa. 412, 147 A.2d 611, 619 (Sup. Ct. 1959). No Fault is designed to protect an individual's out-of-pocket losses, not the losses of a business. Under the rule of this case, plaintiff is being compensated for his lost profits and they truly represent the value of his services to himself." p. 595.

In *Hughes v. Nationwide Ins.,* 98 Misc. 2d 667, 414 N.Y.S.2d 493 (1979), the issue was whether a farmer's wife who did housework and helped run the farm was entitled to "loss of

earnings from work" (the statutory term) under no-fault automobile insurance. The court first held that since the insured was not formally paid any wages she was not entitled to any benefits. It went on to hold, however, that lost profits to a business *could* constitute loss of earnings from work for no-fault insurance purposes and applied the common-law standards for ascertaining such damages in traditional tort actions including sufficient certainty, reasonable basis for computation, operation of the business for a period of time, and that the loss not hinge on the amount of invested capital as the predominant element in the production of income. The court concluded:

"Turning to the present case, it is apparent that there is a failure of proof as to any loss of profits from the farm operation incurred as a direct result of the injuries Mrs. Hughes sustained in the automobile accident. The only proof as to the income and expenses of the farm's operations are the plaintiffs' joint Federal income tax returns for the years 1971 through 1975 which show that the farm made a small profit for the 1971 and 1972 taxable years, and also reflect a loss for 1973, 1974, and 1975. All that is contained on these forms are lump-sum figures listed in general categories. Also, the figures reflecting income and expenses on these tax forms relate only to the computation of taxable income or a loss under the Internal Revenue Code. These forms do not provide any formula or reasonable method for measuring compensable damages in the form of profits from the farm's operations for purposes of this action." p. 675.

In the present case, the income tax return for 1977 shows the following entries for the car business:

| | |
|---|---|
| Gross receipts | $26,634.00 |
| Cost of goods sold and/or operations | 18,644.00 |
| Gross profit | 7,990.00 |
| Other income (patronage) | 40.22 |
| Total income | 8,030.22 |
| Rent on business property | 700.00 |
| Repairs | 2,275.66 |
| Legal fees | 35.00 |
| Interest on business indebtedness | 13,026.06 |
| Travel expense to repossess cars | 441.28 |
| Total deductions | 16,478.00 |
| Net loss | (8,447.78) |

The trial court ordered compensation based on the gross profit figure of $7,990.

There was no evidence here of a periodic draw. No reduction was made for rental or repair expense. No evidence was presented

as to what part of interest expense was attributable to the cars sold and those not sold. It does appear that any income produced by the business was due to Mr. Bradley's personal endeavors, and was not the result of a distribution of invested capital. There obviously was considerable borrowed capital as evidenced by the high interest expense. There is no evidence as to profits or losses from previous years.

"[T]he generally accepted rule is that, where it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, *and their amount is shown with reasonable or sufficient certainty,* there may be a recovery therefor. There is no hard and fast rule with respect to the recovery of lost profits, and each case depends on its facts and circumstances; *therefore, each case must be examined to whether, under its particular facts, the profits involved are capable of reasonable ascertainment."* 25 C.J.S., Damages § 42, pp. 735-36. (Emphasis supplied.)

While we do not agree with the defendants' contention that there can never be earnings within the meaning of the statute from a sole proprietorship which has operated at a loss for tax purposes, we do agree, based on the evidence before us, that plaintiff has failed to meet her burden of proving loss of earnings with reasonable or sufficient certainty. The trial court erred in granting plaintiff judgment for her loss of earnings based on the gross profits of decedent's used car business.

In the present case, Mr. Bradley maintained two separate policies on the same automobile. The PIP coverage was clearly duplicative. Mrs. Bradley seeks to stack those coverages to obtain the maximum $7,800 survivor's benefits and $1,000 funeral benefits from each insurer.

Obtaining insurance loss payments on duplicate coverages is often referred to as stacking and the word stacking refers to the ability of an insured to recover under two or more endorsements for a single loss suffered by the insured. *McNemee v. Farmers Insurance Group,* 228 Kan. 211, Syl. ¶ 2, 612 P.2d 645 (1980). K.S.A. 1980 Supp. 40-3109 states in relevant part:

"(*b*) If two (2) or more insurers or self-insurers are liable to pay personal injury protection benefits for the same injury to any one (1) person, the maximum benefits payable shall be the total of the various maximum benefits provided by this act, and any insurer or self-insurer paying the benefits shall be entitled to recover from each of the other insurers or self-insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim."

Defendants argue this is an unambiguous statute that operates to

limit recovery to the maximum benefits allowable under a single policy, even though two separate policies, for which a premium was paid, may have provided coverage on the same vehicle.

The applicability of 40-3109(*b*) to prevent stacking of PIP benefits when two separate policies provide coverage to the same insured vehicle has not yet been determined in Kansas. A survey of cases will nonetheless be helpful.

In *McNemee v. Farmers Insurance Group,* 228 Kan. 211, the court held that an insurer may properly exclude PIP coverage for injuries sustained by the insured or a relative of the insured occupying a vehicle owned by the insured but not insured under the policy. Such an exclusion was held authorized by K.S.A. 1980 Supp. 40-3108(*a*), which provides:

"(*a*) For injury sustained by the named insured and relatives residing in the same household while occupying another motor vehicle owned by the named insured and not insured under the policy, or for injury sustained by any person operating the insured motor vehicle without the expressed or implied consent of the insured."

In *McNemee,* the insured owned three vehicles on which he maintained individual insurance policies, each providing PIP coverage. He was injured while driving one of the vehicles. Since each policy contained the authorized exclusion, the insured was not permitted to stack his PIP coverage under the three policies even though his medical expenses far exceeded the $2,000 maximum benefits of the single applicable policy. See also *Davis v. Hughes,* 229 Kan. 91, 622 P.2d 641 (1981). *McNemee* turned on the authorized exclusion of coverage contained in 40-3108(*a*) rather than 40-3109(*b*). Since the exclusion operated to preclude coverage at all as to insurers of the nonaccident vehicles, the question of two-insurer liability was not reached. The court in *McNemee* did, however, reject any analogy between the line of Kansas cases allowing stacking of uninsured motorist coverage and PIP coverage. See *Welch v. Hartford Casualty Ins. Co.,* 221 Kan. 344, 559 P.2d 362 (1977); *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976); *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973); *Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, 512 P.2d 507, *reh. denied* 213 Kan. 84, 515 P.2d 1115 (1973); *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34

(1969). In *McNemee v. Farmers Insurance Group,* 228 Kan. at 214-15, the Supreme Court made the following observation:

"The plaintiff-appellant, McNemee, has attempted to draw support from the fact Kansas permits stacking of uninsured motorist coverages, and therefore says the legislature must have intended to 'stack' PIP benefits, as both coverages are creatures of the legislature and remedial in nature. In support, the plaintiff-appellant relies on numerous Kansas Supreme Court decisions striking out various exclusions in automobile policies which attempt to limit or dilute uninsured motorist coverage.

"The fatal flaw in this and in the uninsured motorist analogy is clear. Uninsured motorist protection (K.S.A. 40-284) and PIP benefits are both mandated by the Kansas legislature, but nowhere in the uninsured motorist statute does the legislature grant any type of authorized exclusion prohibiting 'stacking.' This distinction is fundamental, crucial, and paramount when examining uninsured motorist case law and in considering the stacking of PIP benefits."

In this case, two separate policies provide coverage, but no exclusion applies, and defendants argue that 40-3109(*b*) is a legislative prohibition on stacking. Whether such was the legislative intent in enacting that provision is central to the issue here.

All parties cite *Wasche v. Milbank Mut. Ins. Co.,* 268 N.W.2d 913 (Minn. 1978); and *Travelers Insurance Co. v. Lopez,* 93 Nev. 463, 567 P.2d 471 (1977), as dealing with statutory provisions similar to K.S.A. 1980 Supp. 40-3109(*b*). *Wasche* was concerned with Minnesota Statute 65B.47, subd. 5, which provides in pertinent part as follows:

" 'If two or more obligations to pay basic economic loss benefits are applicable to an injury under the priorities set out in this section, *benefits are payable only once* and the reparation obligor against whom a claim is asserted shall process and pay the claim as if wholly responsible, but he is thereafter entitled to recover contribution pro rata for the basic economic loss benefits paid and the costs of processing the claim. . . .' (Italics supplied.)" p. 917.

In holding that this provision did not prohibit stacking, the Minnesota Supreme Court stated:

"Insurers contend that the 'benefits are payable only once' language of this section precludes the injured person from recovering basic economic loss benefits in excess of the policy limits of any one applicable policy. Insureds contend, and the trial courts determined, that the quoted statutory language was intended merely to prevent double recovery of benefits for the same items of loss.

"We are persuaded, as were the trial courts, that § 65B.74, subd. 5, does not preclude stacking of two or more obligations to pay basic economic loss benefits on a single priority level. In enacting a § 65B.47, subd. 5, the legislature adopted verbatim the language of § 4(d) of the Uniform Motor Vehicle Accident Reparations Act, 13 U.L.A., which is intended to govern the priority of applicability of each insurance policy under provisions of the uniform act. An injured person need

file only one claim against one insurer to be compensated without regard to fault under that act. Since there are no finite policy limits, the need for stacking to insure recovery of actual losses would never arise under the uniform act. Therefore, the language of § 4(d), now § 65B.47, subd. 5, of our act, must have been intended only to preclude double recovery for the insured's losses and to pro rate those losses through contribution among insurers of two or more policies on a single priority level. The language of § 65B.47, subd. 5, is nothing more than a standard pro rata clause commonly contained in insurance policies to prevent double recovery and pro rate losses when more than one insurer is involved." 268 N.W.2d at 917-18.

The court went on to state that no other provision of the act precluded stacking of benefits. In *McNemee,* the Kansas Supreme Court distinguished *Wasche* because no express statutory provision authorizing an *exclusion* similar to K.S.A. 1980 Supp. 40-3108 was involved. In *Wasche,* as in the present case, the only statutory provision standing in the way of stacking was one dealing with the situation where two insurers are both primarily liable.

*Wasche* cited with approval *Travelers Ins. Co. v. Lopez,* 93 Nev. 463, involving Nev. Rev. Stat. § 698.260(4) which was identical to the Minnesota provision construed in *Wasche.* It should be noted that *Lopez* concerned a situation where the insured had two separate policies on the same vehicle. No issues concerning exclusions were presented. The court construed the two insurer liability statutes as precluding only double recovery for the same items of damage and allowed stacking so as to cover actual damages in excess of the statutory (and policy) limits as to a single policy. The Court's rationales included:

"Legislative intent supportive of our determination is further reflected in that provision is made to the end that insurers can provide 'additional optional coverage for added reparation benefits.' NRS 698.360. This section has a chilling effect on Travelers' contention that it was the intent of the Legislature to limit the recovery of basic reparation damages to $10,000 per accident. Although *arguendo,* the additional reparation benefits contemplated by NRS 698.360 are to be provided only upon the payment of higher corresponding premiums, there is nothing preventing the securing of additional reparation benefits through the purchase of a separate policy of insurance providing for the same basic reparation benefits. Nowhere in our legislation is there evidence that the $10,000 minimum basic reparation benefits need be purchased from the same insurer. Had the Legislature intended a different result, it would have so provided.

"We conclude by holding that there exists no legislative prohibition against the 'stacking' of insurance policies when both insurers are at the same level of priority, as is the case here. There are public policy and other considerations which support this conclusion. For example, the insured Lopez, paid premiums

on two policies of insurance covering the same vehicle. Both policies of insurance provided for the payment of basic reparation benefits. Injuries and expenses sustained by the insured are in excess of $20,000. Requiring the payment by Travelers of the policy limit would not result in a windfall to Lopez, nor would it result in any prejudice to the insurance company, in that the insurance company has accepted the payment of premiums and has, in effect, assumed the risk that injury to the insured may occur. The premiums collected by Travelers are deemed to have comprehended this potential." pp. 466-67.

Defendants and *amicus* defense counsel attempt to distinguish *Wasche* and *Lopez* on the ground that the Kansas statute is different. While this is certainly true, the Minnesota and Nevada statutes at first blush would appear to be even clearer pronouncements against stacking than the language of 40-3109(*b*). *Amicus* defense counsel's argument involving the amendment rejected in Minnesota is faulty. It is submitted that the Kansas language "the total of the various maximum benefits provided by this Act" is *not* a simple "paraphrase" of the clear, rejected Minnesota language "the amount which could be recovered in benefits under one policy." The Kansas language is discussed in more detail later.

Section 627.736(4)(e), Florida Statutes (Supp. 1980) is very similar to our statute. It provides:

"(*e*) If two or more insurers are liable to pay personal injury protection benefits for the same injury to any one person, the maximum payable shall be as specified in subsection (1), and any insurer paying the benefits shall be entitled to recover from each of the other insurers an equitable pro-rata share of the benefits paid and expenses incurred in processing the claim."

Subsection (1), in turn, provides that every insurance policy shall provide PIP benefits "to a limit of $10,000 for loss sustained by such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle . . . ."

In *Travelers Indem. Co. v. Wolfson,* 348 So. 2d 661 (Fla. Dist. Ct. App. 1977), the court construed these provisions as prohibiting stacking:

"The plaintiff urges that the underlying rationale of these cases is that the insured pays a separate premium for each coverage on each vehicle and, therefore, should have the benefit of each premium paid. In addition, the plaintiff cites the opinion of this court in *State Farm Mut. Auto. Ins. Co. v. Castaneda,* 339 So. 2d 679 (Fla. 3d DCA 1976), as indicating that in the absence of the exception in the policy, personal injury protection benefits could have been aggregated.

"The distinction between medical payments and uninsured motorist coverages,

on the one hand, and personal injury protection benefits, on the other, lies in the statute requiring such coverages. Medical payments coverage and uninsured motorist coverage are separate benefits which are purchased by the insured for his personal benefit. On the other hand, personal injury protection benefits are a creation of the legislature enacted to limit tort suits where two insured vehicles are involved in an accident in instances where the one claiming benefits formerly would have sought recovery from the one at fault. Cf. *Government Employees Insurance Co. v. Graff*, 327 So. 2d 88 (Fla. 1st DCA 1976). As such, the prescribed limitation of $5,000 is applicable to a single accident. Because of the clear wording of Section 627.736(1), Florida Statutes (1975), there is no question but that the total benefits are $5,000. Cf. the wording in Section 627.736(4)(e), Florida Statutes (1975), evidencing the same intent. There being no extension of this required coverage in respondent's policy, the language of the statute is the controlling element.

. . . . .

"We, therefore, hold that the clear language of Section 627.736(1), Florida Statutes (1975), limits recovery of personal injury protection benefits to the statutory limit of $5,000 in a single accident." 348 So. 2d at 662-63. (The Florida statute has since been amended to provide a limit of $10,000).

The court noted that it was deciding a question not decided in *State Farm Mut. Auto. Ins. Co. v. Castaneda,* 339 So. 2d 679 (Fla. Dist. Ct. App. 1976) as that case turned on an authorized exclusion. *Castaneda* was cited with approval in *McNemee,* 228 Kan. at 213, 215. The present case similarly calls for construction of a statute not involved if an exclusion is available.

*Amicus* trial lawyers in support of stacking in the present case contend that the Florida statute is distinguishable much the same as *amicus* defense counsel argue that the Minnesota and Nevada statutes are distinguishable. In *McNemee,* our Supreme Court noted that the Kansas statutes, by containing provisions authorizing exclusions, were closer to the Florida statutes than those of Minnesota or Nevada, that lack any authorization for exclusions. Again, however, it is important to note that exclusions are not involved in this case. Other Florida provisions differ from our statutes and different results have been reached. See *Dreiling v. State Farm Mut. Auto. Ins. Co.,* 227 Kan. 851, 856, 610 P.2d 611 (1980). We have found no Florida statute comparable to K.S.A. 1980 Supp. 40-3120 that would allow for excess coverages. On the contrary, Fla. Stat. Ann. § 627.739 (West 1980 Supp.) provides for optional limitation of PIP benefits with corresponding premium reduction but makes no provision for additional coverage.

The language at issue in 40-3109(*b*) is as follows:

"[*T*]*he maximum benefits payable shall be the total of the various maximum*

*benefits provided by this act,* and any insurer or self-insurer paying the benefits shall be entitled to recover from each of the other insurers . . . an equitable pro rata share . . . ." (Emphasis supplied).

The Florida statute differs only by providing that "the maximum payable shall be as specified in Subsection (1)." As indicated above, subsection (1) of the Florida statute limits benefits to $10,000. *Amicus* trial lawyers point out that House Bill No. 1048 of the 1973 legislature, which was *not* adopted, would have been identical to the Florida statute by providing "the maximum benefits payable shall be as specified in subsection (*f*) of Section 7 . . . ." Section 7 (*f*), in turn, *as adopted,* provides that all insurance policies must contain personal injury protection benefits "not exceeding the limits prescribed for each of such benefits." Why did the legislature change the proposed language of the act which became 40-3109(*b*) to provide for "*the total of* the various maximum benefits provided by this act"? *Amicus* trial lawyers contend this was significant and shows the legislature specifically contemplated stacking when two or more insurers are liable for PIP benefits for a single injury. The inclusion of "the total of" is indeed confusing. Does this mean that the maximum benefits shall be the total of the various maximums *for which both insurers are potentially liable* (thereby doubling the maximum benefits)? Or does it mean the maximum benefits shall be the total of the various maximums *which could be recovered under one policy?* Or does it have some other meaning, such as allowing recovery beyond the specified limit for a particular benefit, *e.g.* funeral benefits, as long as the total PIP payments do not exceed the "total of the various maximums"?

The No-Fault Act, as remedial legislation, is to be liberally construed to provide the intended benefits. *Easom v. Farmers Insurance Co.,* 221 Kan. 415, 437, 560 P.2d 117 (1977) (Schroeder, [now C.J.] J., concurring and dissenting). A statute should never be given construction that leads to uncertainty, injustice or confusion, if it is possible to construe it otherwise. *Coe v. Security National Ins. Co.,* 228 Kan. 624, Syl. ¶ 2. The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan.

325, 552 P.2d 1363 (1976). In the present case, the construction of 40-3109(*b*) urged by the defendants works an injustice. As noted above, *McNemee* rejected any analogy to uninsured motorist cases because the legislature has nowhere provided any authorized exclusion to prohibit stacking of uninsured motorist coverage. However, no exclusions are applicable to this case wherein two separate policies cover the *same vehicle*. As such, the following rationale of the court in *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 793, 457 P.2d 34 (1969), holding that uninsured motorist coverages may be stacked, is pertinent:

"We are accustomed to purchasing insurance which follows the person in units or multiples, with the premium fixed by the insurer accordingly (the premium, of course, is subject to state regulation). When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages. We would not be understood as implying that an injured insured can pyramid separate coverage in the same policy so as to recover more than his actual loss."

This principle is perfectly consistent with *McNemee*. The legislature has authorized an exclusion of PIP coverage for owned vehicles not insured under the policy. When the exclusion is present, there is no coverage for injuries incurred in a vehicle not insured under the policy, consequently the premium for that policy should be set accordingly. The premium should be based on the potential liability for injury incurred while occupying the insured vehicle only. In the present case, however, two separate policies, for which premiums were paid, provided coverage on the *same* insured vehicle. Allowing the defendants to limit recovery under these circumstances to the amount that could be recovered under one policy results in a windfall to the insurance companies. In the words of *Sturdy*, such an interpretation works a forfeiture of a benefit for which the insured has paid. We do not believe the legislature intended such a result.

*Amicus* defense counsels' argument that the "two premiums, two benefits" analysis is not applicable is without merit. They direct our attention to *Simpson v. KFB Insurance Co., Inc.*, 209 Kan. 620, 498 P.2d 71 (1972). In that case, the insured attempted to stack medical coverages under three separate policies that contained exclusions for such coverage for injuries incurred in

other than the insured vehicle (as *amicus* defense counsel point out, similar to the exclusion of 40-3108[*a*] given effect in *McNemee*). The court rejected this approach, pointing out that only one vehicle was insured under each policy for which one premium was paid. *Amicus* defense counsel contend that implicit in this rationale is the fact the insured had never paid for stacked benefits and therefore suffered no forfeiture. *Amicus* defense counsel then attempt to extend this rationale to the present situation by arguing that 40-3109(*b*), as read into every insurance policy, excludes stacking past the liability of one policy, and therefore no premiums were ever paid for this. Such an argument completely overlooks the fact that two separate premiums *were* paid on the insured vehicle to provide full coverage for the maximum benefits. There is no indication that these premiums were reduced to reflect the possibility that the insurer would not have to pay the full amount of the minimum benefits because another insurer also provided coverage on the vehicle.

The defendants and *amicus* defense counsel argue that the Kansas Insurance Commissioner's interpretation that PIP benefits cannot be stacked is persuasive. The letter containing this interpretation is found as an appendix to the brief of appellant Continental Insurance. The letter states:

"Stacking of P.I.P. benefits is not allowed. Reference . . . Section 40-3109, subsection (4b)" [*sic*].

It should be noted that the insurance commissioner's interpretation discloses no rationale other than citation to the statute in question, which has already been demonstrated to be less than clear. The interpretation placed upon a statute by an administrative body, whose duties are to carry the legislative policy into effect, should be given consideration and weight when the statute is ambiguous and the intent of the legislature is not clear. But the court need not follow an administrative interpretation placed upon the statute when the interpretation of the administrative body is erroneous. *Bill George Chrysler-Plymouth, Inc. v. Carlton,* 216 Kan. 365, Syl. ¶ 2, 532 P.2d 1351 (1975). The final construction of a statute rests with the courts. *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, 648, 518 P.2d 453 (1974).

What is the effect of 40-3109(*b*)? As in *Farm & City Ins. Co.,* 220 Kan. 325, it can be seen that the statute applies in situations

in which the exclusions authorized by 40-3108 are not part of the policy, when the insured is injured while occupying a nonowned vehicle or when a pedestrian; or, as in the present case, when two separate policies provide coverage to the same insured vehicle. The purpose of the statute in such instances is to prevent *double recovery* of benefits for the same items of loss, not to deny recovery of actual damages above the specified limit of one policy when two policies for which premiums have been paid provide coverage.

As *amicus* trial lawyers point out, nothing in the reparations act prevents the purchasing of coverage exceeding that required by the act. K.S.A. 1980 Supp. 20-3120 provides:

"Nothing in this act shall be construed as prohibiting or discouraging reasonable competition or the availability of motor vehicle liability insurance policies containing coverage exceeding that required to comply with section 18 [40-3118] of this act."

Indeed, the AID policy involved in this case shows that AID offers PIP coverage in excess of the statutory limits in the area of medical expenses, work loss, and monthly earnings—survivor's benefits. The rationale of the Nevada court in *Travelers Ins.* would appear to be well reasoned. Nothing requires excess coverage to be secured from the same company at a higher premium. The insured, as Mr. Bradley did here, should be able to purchase two policies on the same vehicle to obtain such excess coverage.

Under the circumstances, the trial court did not err, in determining that the policies could be stacked. To permit excess coverage for a higher premium from the same company, yet prohibit the purchase of two separate policies on the same vehicle to obtain such "excess" coverage, would result in prohibiting or discouraging reasonable competition contrary to K.S.A. 1980 Supp. 40-3120.

What has been said herein about the purpose of 40-3109(*b*) disposes of the issue of double recovery. It is prevented by the statute. There can be no windfall to the insured, just as there should be no windfall to the insurer. This result is consistent with the uninsured motorists cases uniformly holding that coverages can be stacked up to but not more than the full amount of the damages sustained. *Welch v. Hartford Casualty Ins. Co.,* 221 Kan. 344, Syl. ¶ 4, 559 P.2d 362 (1977). The trial court erred by allowing double recovery. Plaintiff's recovery should be limited

to $1,432.76, the actual amount of funeral expenses, with each defendant being responsible for one-half of the cost.

Affirmed in part, reversed in part.