Margaret S. WILSON,
Plaintiff–Appellee/Cross–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Appellant/Cross–Appellee.

Nos. 87–2717, 87–2788.

United States Court of Appeals,
Tenth Circuit.

May 30, 1991.

■■■■■■■■■■

Neil C. Bruce of Retherford, Mullen, Rector & Johnson, Colorado Springs, Colo. (Robert K. Jones, with him on the brief), for defendant-appellant/cross-appellee.

Patric J. LeHouillier of LeHouillier, Erler and Nolan, Colorado Springs, Colo., for plaintiff-appellee/cross-appellant.

Before SEYMOUR and McWILLIAMS, Circuit Judges, and PHILLIPS,* District Judge.

SEYMOUR, Circuit Judge.

■ This case arises from State Farm Mutual Automobile Insurance Company's (State Farm) failure to pay benefits to Margaret S. Wilson under the Colorado Auto Accident Reparations Act (CAARA or Act), Colo.Rev.Stat. §§ 10–4–701 to –723 (1987 & Supp.1990). State Farm appeals from the jury verdict in favor of Ms. Wilson, alleging numerous errors below. Ms. Wilson cross-appeals the district court's dismissal of her state law claim of bad faith breach of insurance contract and the court's grant of a directed verdict for State Farm with respect to her claim for intentional infliction of emotional distress due to outrageous conduct. Ms. Wilson also asks that we award her attorney's fees to cover the cost of this appeal.[1] We affirm in part and reverse in part.

## I.

Ms. Wilson, the sole proprietor of a law firm and a resident of New Mexico, was injured in an automobile accident on December 15, 1985, in Colorado while a passenger in an automobile driven by Ronald A. Peterson. Mr. Peterson was covered under an insurance policy issued by State Farm, which included no-fault personal injury protection (PIP) as required by the CAARA. Mr. Peterson's coverage extended to passengers in his automobile.

Ms. Wilson submitted claims to State Farm for loss of income, medical and rehabilitative expenses, and essential services. Disagreements arose between Ms. Wilson and State Farm concerning the proper basis for calculation of lost income, as well as whether certain claims were compensable under the Act. Ms. Wilson subsequently filed suit against State Farm for its failure to pay PIP benefits as required by the CAARA. Ms. Wilson also asserted claims for bad faith breach of insurance contract and intentional infliction of emotional distress caused by extreme and outrageous conduct. The district court dismissed the bad faith claim, holding that it was preempted by the CAARA, and directed a verdict for State Farm on the issue of intentional infliction of emotional distress. The jury found for Ms. Wilson on the claims based on the CAARA, awarding her $40,500 for medical and rehabilitation expenses, and $93,400 for lost income. It also found that State Farm's failure to pay was willful and wanton, which entitled her to treble damages under the Act. Pursuant to the Act, the court awarded prejudgment interest at a rate of 18% in the amount of $29,045, and attorney's fees totaling $26,200. The district court also ordered that interest run from the date of judgment at a rate of 7.88%.

## II.

This case requires us to construe the Colorado Auto Accident Reparations Act, specifically §§ 10–4–706 and 10–4–708.[2]

---

* The Honorable Layn R. Phillips, United States District Judge for the Western District of Oklahoma, sitting by designation.

1. Ms. Wilson also argues that she is entitled to post-judgment interest at a rate of 18% interest pursuant to § 10–4–708 of the Act, rather than at the statutory rate of 7.88% awarded by the district court. Because this argument was not presented to the district court we will not consider it on appeal. *See Dille v. Council of Ener-*

gy *Resource Tribes,* 801 F.2d 373, 376–77 (10th Cir.1986); *Channel v. Heckler,* 747 F.2d 577, 579 n. 2 (10th Cir.1984).

2. Section 10–4–708 was amended in 1989 to provide for arbitration procedures to resolve disputes over PIP claims. *See* Colo.Rev.Stat. § 10–4–708(1.5) (Supp.1990). The amendment is applicable to claims arising after July 1, 1989. *See* 1989 *Colo.Sess.Laws* L. 89, p. 461, § 6. Because Ms. Wilson brought this action in 1986

"The [CAARA] mandates that every owner of a motor vehicle operated on Colorado's public highways obtain a complying automobile insurance policy....

"The [CAARA] was enacted in part to avoid inadequate compensation to victims of automobile accidents. Consistent with this purpose, every owner of a motor vehicle operated on the public highways of Colorado must maintain an automobile insurance policy providing personal injury protection benefits 'without regard to fault' up to the statutory limits.... The CAARA is incorporated as part of every auto insurance policy, and governs in any conflict between the act and the insurance policy."

*Allstate Ins. Co. v. Allen,* 797 P.2d 46, 49 (Colo.1990) (en banc) (citations omitted). PIP benefits compensate persons injured in automobile accidents for medical expenses incurred and gross income lost due to the accident. *See* Colo.Rev.Stat. § 10–4–706.

State Farm first claims that the district court erred by instructing the jury that the formula for calculating Ms. Wilson's lost gross income was her hourly rate multiplied by the hours she would have worked but for her injuries. State Farm argues that while this calculation would properly measure the gross income of Ms. Wilson's sole proprietorship, *i.e.,* her law firm, section 10–4–706 provides compensation for lost *personal* gross income, not the gross income generated by the claimant's business. Thus, it contends, the appropriate measure of benefits is equal to Ms. Wilson's hourly rate multiplied by the hours she would have worked but for her injuries, *minus the business expenses attendant to that work.* While this issue has not been expressly addressed by the Colorado courts, State Farm argues that *Ramirez v. Veeley,* 757 P.2d 160 (Colo.App.1988), and a survey of other state cases construing similar no-fault PIP insurance statutes support this position. Ms. Wilson asserts that *Ramirez* is inapt, that the term "gross income" should be given its ordinary meaning, *i.e.,* total income exclusive of deduc-

tions, and that none of the state cases cited by State Farm are relevant because the courts were not construing the term *"gross income"*.

Under *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we review de novo a district court's interpretation of state law. Under Colorado law, "[o]ur primary task in construing [the CAARA] is to give effect to the intent of the [Colorado] General Assembly." *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991) (en banc). Colorado law also directs that we "construe the statute as a whole to give effect to all of its parts." *Id.*

Section 10–4–706 provides in pertinent part:

"[T]he minimum coverages required for compliance with [the CAARA] are as follows:

"*Payment of benefits equivalent to* one hundred percent of the first one hundred twenty-five dollars of *loss of gross income* per week, seventy percent of the next one hundred twenty-five dollars of loss of gross income per week, and sixty percent of any loss of gross income per week in excess thereof, with the total benefit under this subparagraph (1) not exceeding four hundred dollars per week, *from work the injured person would have performed had he not been injured during a period commencing the day after the date of the accident,* and not exceeding fifty-two additional weeks."

(emphasis added). Although we agree that the ordinary meaning of gross income is total income exclusive of deductions, this is not dispositive of the issue. Rather, we must decide *what kind of* gross income it is that the CAARA compensates in order to arrive at the correct formulation.

█ "The Act is designed to ensure that *persons* injured in automobile accidents are fully compensated for their injuries." *Sulzer v. Mid–Century Ins. Co.,* 794 P.2d

---

her claim is governed by the unamended statute. Our holdings with respect to the issues disputed under the CAARA are only applicable to the statute as it was written prior to the amendment.

1006, 1008 (Colo.1990) (en banc) (emphasis added). When the claimant is an employee, the gross income lost is equivalent to the amount of salary the claimant would have received had she not been injured. *See Bondi v. Liberty Mut. Ins. Co.,* 757 P.2d 1101, 1102 (Colo.App.1988) (section 10–4–706 provides for lost wages). However, where, as here, the claimant is a sole proprietor, she wears two hats—one as an employee and one as a business entity. Because the statute provides *individual,* not *business* coverage, it is necessary to calculate the sole proprietor's claim for lost income from her position as an employee. In such case, the proper amount of reimbursement equals that part of the gross income of the business that would have been earned by the claimant as individual wages. To compensate the sole proprietor based upon the gross income generated by the *proprietorship* would be to unfairly compensate her for business expenses, such as overhead or the salaries of her employees. We believe that a just and reasonable construction of section 10–4–706 mandates the deduction of business expenses from the calculation of lost gross income when the claimant is a sole proprietor.

We agree with State Farm that *Ramirez v. Veeley,* 757 P.2d 160 (Colo.App.1988), provides strong support for this construction. In *Ramirez,* the Colorado Court of Appeals concluded, without expressly stating its rationale, that "loss of gross income per week pursuant to § 10–4–706 must be computed on an individual's gross income and not on the gross sales or income of the individual's business." *Id.* at 162. A review of other state court cases deciding this issue with respect to their own no-fault PIP auto insurance statutes supports our determination. *See, e.g., Adams v. Auto Club Ins. Ass'n,* 154 Mich.App. 186, 397 N.W.2d 262, 264 (1986) (per curiam) (business expenses should be deducted from gross receipts in determining lost income of self-employed claimant under no-fault act); *Bradley v. Aid Ins. Co.,* 6 Kan.App.2d 367, 629 P.2d 720, 726 (1981) (no-fault designed to protect claimant's out-of-pocket losses, rather than losses to her business); *Zyck v.*

*Hartford Ins. Group,* 150 N.J.Super. 431, 375 A.2d 1232, 1233 (App.1977) (under no-fault statute partner in business owed only for loss of income, not damages measured by value of service to business), *cert. denied,* 75 N.J. 521, 384 A.2d 501 (1977). Although it is true that the no-fault statutes construed in the foregoing cases do not modify the term "income" with "gross", our prior analysis makes clear why this distinction is, for the purposes of personal injury protection insurance, without a difference. We must therefore reverse and remand for a new trial on damages to determine the amount of income that should have been paid by State Farm based on Ms. Wilson's hourly rate multiplied by the hours she could not work due to her injuries, minus business expenses.

■ State Farm next contends that the district court erred in denying its motion for a directed verdict on Ms. Wilson's claim that it acted willfully and wantonly under section 10–4–708 of the Act by refusing to pay her claims. A willful and wanton failure to pay PIP benefits results in an automatic statutory penalty of three times the amount of the award. *See Farmers Group, Inc.,* 805 P.2d at 421.

"In a diversity case, this court applies the federal standard in determining whether the evidence is sufficient to go to the jury or, as a matter of law, the court should direct a verdict. Under the federal standard, the trial court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the party against whom the motion is directed. When the evidence is so viewed, a directed verdict is proper only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the opposing party would be improper and would have to be set aside by the trial judge.

"While the sufficiency of the evidence is tested against the federal standard, the underlying cause of action in a diversity case is governed by state law."

*Peterson v. Hager,* 724 F.2d 851, 853–54 (10th Cir.1984) (citation omitted).

Although there has been no state judicial interpretation of "willful and wanton" conduct under section 10–4–708, the Colorado courts have defined such conduct in other contexts as that which is done purposefully, heedlessly, and recklessly, without regard to the consequences or the rights of others. *See, e.g., Pettingell v. Moede,* 129 Colo. 484, 271 P.2d 1038, 1042 (1954) (en banc) (automobile guest statute); *see also Navratil v. Parker,* 726 F.Supp. 800, 805 (D.Colo.1989) (public employee immunity statute); *cf.* Colo.Rev.Stat. § 13–21–102(1)(b) (1987) (exemplary damages statute). Under Colorado law, " 'it is to be presumed that a legislature is cognizant of and adopts the construction which prior judicial decisions have placed on particular language when such language is employed in subsequent legislation.' " *Allen,* 797 P.2d at 50 n. 4 (quoting *People v. Cooke,* 150 Colo. 52, 62, 370 P.2d 896, 901 (1962)).

■ Colorado requires insurers to reimburse claimants for expenses incurred due to an auto accident within thirty days of receipt of reasonable proof that the expenses were in fact incurred. *See* Colo. Rev.Stat. § 10–4–708. Here, there was evidence produced that State Farm continued to receive, but not pay, bills incurred for treatment of Ms. Wilson's injuries without making any effort to ascertain the reasonableness of such bills. State Farm adjustors rejected Ms. Wilson's physicians' prescriptions and recommendations regarding her medical and rehabilitative treatment without consulting another doctor or expert in the field. There also was evidence that State Farm received from Ms. Wilson documentation of the income lost due to her injuries, both from her law firm and from other sources, but failed to reimburse her in accordance with the Act. Thus, State Farm acted purposefully and without regard to Ms. Wilson's right under the CAARA to have such bills paid within thirty days. State Farm argues that the correct standard of proof with respect to this issue is beyond a reasonable doubt. However, during the pendency of this appeal, the Colorado Supreme Court held that willful and wanton conduct under the CAARA need only be established by a preponderance of the evidence. *Farmers Group, Inc.,* 805 P.2d at 427. We therefore conclude there was sufficient evidence of willful and wanton conduct on the part of State Farm in not paying Ms. Wilson's medical, rehabilitative and gross income claims to submit this issue to the jury under the preponderance standard. However, as discussed above, the district court's errant construction of the gross income formula requires reversal and remand with respect to the amount of damages to be awarded under this claim.

### III.

■ We turn now to the issues raised in Ms. Wilson's cross-appeal. Ms. Wilson argues that the district court erred when it held that the CAARA preempted her common law claim for bad faith breach of insurance contract. Subsequent to the trial, the Supreme Court of Colorado held that the Act does not preempt this claim, *see Farmers Group, Inc.,* 805 P.2d at 426, and we therefore must reverse the district court's ruling and remand for a trial on this issue.

■ Ms. Wilson next contends that the district court erred when it directed a verdict for State Farm on her claim for intentional infliction of emotional distress caused by extreme and outrageous conduct. Under Colorado law, such conduct must be:

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse [her or] his resentment against the actor, and lead [her or] him to exclaim, 'Outrageous!' "

*Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo.1988) (quoting *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970)). Ms. Wilson argues that State Farm's refusal to pay her claims within the statutorily required thirty days amounted

to outrageous conduct because State Farm knew of the financial instability of her law practice. She also claims that the conduct of State Farm Agent, Richard Chilson, was outrageous when he slurred her American Indian heritage and made derogatory comments about her gender. Although these acts present a close case, we agree with the district court that they are insufficient to create liability under Colorado law. *Cf. Churchey*, 759 P.2d at 1351 ("not all 'acts that are definitely inconsiderate and unkind' create liability") (quoting *Restatement (Second) of Torts*, § 46 comment d (1977)).

Ms. Wilson asks that we award her attorneys fees under Colo.Rev.Stat. § 10–4–708(1) (1987) for the expenses incurred in this appeal. At the time the dispute arose, section 10–4–708(1) provided in pertinent part:

"In the event that the insurer fails to pay [PIP] benefits when due, the person entitled to such benefits may bring an action in contract to recover the same. In the event the insurer is required by such action to pay any overdue benefits, the insurer shall, in addition to the benefits paid, be required to pay the reasonable attorney fees incurred by the other party."

When the defendant appeals the jury's award of overdue benefits under the Act, a defense on appeal is necessary in order to recover that award. In effect, this defense is an extension of the original contract action that the claimant was forced to institute in order to receive what the statute requires. Thus, when the claimant is successful on appeal, the insurer must pay the claimant's attorney's fees for the defense of that appeal. In this case, however, State Farm was warranted in refusing to pay benefits based on the gross income of Ms. Wilson's business. Consequently, an award of attorney's fees for the appeal is inappropriate.

The judgment of the district court is affirmed insofar as it awarded Ms. Wilson damages for medical and rehabilitative expenses and directed a verdict for State Farm on the claim for intentional infliction of emotional distress due to outrageous conduct. The judgment is reversed and remanded for a new trial on Ms. Wilson's bad faith breach of insurance contract, and for a damage determination only on Ms. Wilson's claim for lost gross income. The district court is further instructed to treble the damages, if any, determined under the gross income claim.